JONES METAL PRODUCTS CO. ET AL., APPELLANTS, v. WALKER, DIR., DEPT. OF INDUSTRIAL RELATIONS, ET AL., APPELLEES.

174

(No. 71-317—Decided March 15, 1972.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. James P. Kennedy, Mr. Lester S. Lash* and *Mr. Robert F. Weaver, Jr.,* for appellants.

*Mr. William J. Brown,* attorney general, and *Mr. Thomas V. Martin,* for appellees.

O'NEILL, C. J. Appellants admit that they have pursued a policy of employment practices, the effect of which has been to treat its female employees differently from its male employees, solely because of their sex,

Appellants contend that this differing treatment is *required* by R. C. 4107.42, 4107.43 and 4107.46(A), 4107.-46(B) and 4107.46(E), and that Title VII *prohibits* differing treatment of male and female employees solely on the basis of sex.[1] Thus, it is argued that the above-mentioned Ohio statutes are inconsistent with Title VII and, by virtue of the Supremacy Clause[2] of the United States Constitution, are preempted.

The requisite standing to seek a declaratory judgment is present, for in their complaint, plaintiffs-appellants state that "if plaintiffs eliminate their employment practices with respect to female employees plaintiffs, would be in a violation of state law, but if plaintiffs do not eliminate said employment practices, plaintiffs are, and will continue to be, in violation of Title VII."

According to appellants, continued compliance with these state statutes will subject them to a multiplicity of damage suits by their employees, in the federal courts, for violations of Title VII. Conversely, if they comply with the requirements of Title VII, they will subject themselves to suits by one or more of the appellees and will subject themselves to fines, imprisonment and the costs of defending such litigation. Thus, a justiciable controversy exists.

Section 2000e-2(a), Title 42, U. S. Code, provides:

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individuals * * * sex * * *; or

---

[1]Section 2000e(b), Title 42, U. S. Code, defines an employer as "a person engaged in industry affecting commerce who has twenty-five or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and any agent of such person." It is stipulated that appellants are employers within the meaning of this section.

Nothing said in this opinion, however, affects any person who is *not* an employer as defined in Section 2000e(b), Title 42, U. S. Code.

[2]Paragraph two of Article VI of the United States Constitution.

"(2) to limit, segregate or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals * * * sex * * *."

Section 2000h-4, Title 42, U. S. Code, provides:

"Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of *state laws* on the same subject matter, nor shall any provision of this Act be construed as invalidating any provisions of *state law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.*" (Emphasis added.) This section applies to Title VII.

Appellees contend that this latter section indicates a congressional intent "to preserve female protective statutes."[3] This court does not agree. First, this section has general applicability to "any title of" the Civil Rights Act, of which Title VII is only a part. Secondly, this section states that Congress intended to preserve only those state laws which are not "inconsistent with any of the *purposes of*" the Civil Rights Act of 1964, "or any provision thereof." Thus, the female protective statutes may withstand attack only if they are not inconsistent with either the purpose of or any provision of Title VII. See *Rosenfeld* v. *Southern Pacific Co.* (C. C. A. 9, 1971), 444 F. 2d 1219.

"The test of whether both federal and state * * * [laws] may operate, or the state * * * [law] must give way, is whether both * * * [laws] can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives." *Florida Lime & Avocado Growers* v. *Paul* (1963), 373 U. S. 132, 142.

---

[3] In support of their contention, appellees cite *Florida Lime & Avocado Growers* v. *Paul* (1963), 373 U. S. 132, 142, for the principle that "federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained."

Thus, if enforcement of the state law would invalidate the federal policy, or impair the exercise of federal power, the state law is inconsistent within the meaning of Section 2000h-4, Title 42, U. S. Code, and is preempted.

The federal policy underlying Title VII, as enunciated by the Supreme Court, is that "persons of like qualifications be given employment opportunities irrespective of their sex." *Phillips* v. *Martin Marietta Corp.* (1971), 400 U. S. 542, 27 L. Ed. 2d 613. It is a policy "of non-discrimination [which] requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group." Section 1604.1(a)(ii), 29 C. F. R. This policy can only be implemented if each individual, otherwise entitled to the position, is afforded an opportunity to demonstrate that he has the capacity to perform the work. See, *e. g., Rosenfeld* v. *Southern Pacific Co., supra* (444 F. 2d 1219); *Bowe* v. *Colgate-Palmolive Co.* (C. C. A. 7, 1969), 416 F. 2d 711; *Weeks* v. *Southern Bell T. & T. Co.* (C. C. A. 5, 1969), 408 F. 2d 228; *Caterpillar Tractor Co.* v. *Grabiec* (S. D. Ill. 1970), 317 F. Supp. 1304.

The policy which underlies R. C. 4107.42 and 4107.46 (E) is to accord to females certain "privileges" not available to males. That policy, furthered by R. C. 4107.43 and 4107.46(A) and 4107.46(B) is the "protection" of females from dangerous or hazardous occupations and exploitation by employers.

Although the purpose is beneficent, that alone cannot be made the basis for upholding these statutes if the state mandated policy of differing treatment of male and female employees conflicts with the command of Title VII. R. C. 4107.43,[4] on its face, compels an employer to refuse to hire a female for any of the occupations specified therein solely

---

[4]For example, R. C. 4107.43 prohibits, *inter alia*, the employment of females in the following occupations: crossing watchman, section hand, gas or electric meter reader, in delivery service on motor vehicles over one ton capacity, in baggage handling, freight handling, trucking, and handling by means of hand trucks heavy materials of any kind, and in any occupation requiring frequent or repeated lifting of weights over 25 pounds.

because of her sex. That section does not even allow a female, individually, an opportunity to demonstrate that she has the qualifications necessary for job performance.

R. C. 4107.46(A) and 4107.46(B),[5] on their face, compel an employer to refuse to employ a female, solely because of her sex, in excess of a specified number of hours —per day, per week, and per work period when her employment is noncontinuous. Thus, a female employee is deprived of at least the opportunity to gain additional compensation from overtime work, and, in some instances, she is deprived of certain jobs or positions which may require that employees work overtime. Similarly, under those statutes, an employer will refuse to hire a potential employee, solely because of her sex, if, for example, he requires his employees to work longer hours or periods than are specified in R. C. 4107.46(A) or 4107.46(B). Females, whether employees or potential employees, are not given equal treatment, as required by Title VII, if the conditions of their employment are subject to restrictions not otherwise applied to males.

While not as apparent, R. C. 4107.42 and 4107.46(E)[6] also conflict with the policy of Title VII, specifically with

---

[5] R. C. 4107.46(A) prohibits the employment of females for more than 48 hours in any one week, or eight hours in any one day, or on more than six days in a calendar week, subject to certain exceptions which themselves limit the hours per day and per week, and the number of days per week.

Similarly, R. C. 4107.46(B) prohibits the employment of females in excess of a specified number of hours per day where the work to be performed is noncontinuous, but is divided into two or more periods.

[6] R. C. 4107.42 requires every employer who employs females to provide a suitable seat for each female employee and to permit the use of those seats when she is not engaged in her active duties. The employer must also provide a lunchroom, separate and apart from the workroom, and allow female employees 30 minutes for meal time. If no lunchroom is provided, female employees must be given not less than one hour for meal time and be permitted to leave the premises.

R. C. 4107.46(E) prohibits the employment of a female for more than a five-hour period unless such period is interrupted by a meal period of 30 minutes.

Section 2000e-2(a)(1), Title 42, U. S. Code. Those statutes require an employer to accord certain "privileges" to females which are not required for males. Section 2000e-2(a)(1) makes it an unlawful employment practice for an employer to discriminate against any *individual* with respect to his conditions or privileges of employment because of such *individual's* sex. Title VII applies equally to males as well as females. Compare *Rosen* v. *Public Service Electric and Gas Co.* (D. C. N. J. 1970), 328 F. Supp. 454.

Thus, enforcement of the state statutes against appellants would require them to perform the very acts proscribed by Title VII. Therefore, this court holds that R. C. 4107.42, 4107.43, 4107.46(A), 4107.46(B) and 4107.46(E) are "inconsistent" within the meaning of Section 2000h-4, Title 42, U. S. Code, and, by virtue of the Supremacy Clause, are preempted.

Appellees next contend that even if those statutes are inconsistent with Title VII, they are "saved" by virtue of Section 2000e-7, Title 42, U. S. Code. According to appellees, this section indicates a congressional intent to preserve the female protective laws.

Section 2000e-7, Title 42, U. S. Code, provides:

"Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty or punishment provided by any * * * law of any state * * * other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter."

This saving clause was designed to preserve the effectiveness of state antidiscrimination laws. See 110 Cong. Rec. 7243, 12721. See, also, *e. g., Rosenfeld* v. *Southern Pacific Co., supra* (444 F. 2d 1219), at page 1226; *Manning* v. *General Motors Corp.* (N D. Ohio 1971), 3 E. P. D., paragraph 8325; *Ridinger* v. *General Motors Corp.* (S. D. Ohio 1971), 325 F. Supp. 1089; *Local 246* v. *Southern California Edison Co.* (D. C. Cal. 1969), 3 E. P. D., paragraph 8100. This conclusion is further supported by the fact that the saving clause was included in the Civil Rights

Bill *before* sex was added as a forbidden category of discrimination.[7] See Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv. L. Rev. 1109, 1191. Thus, this court concludes that Section 2000e-7 was not intended by Congress to specifically preserve the female protective laws.

Appellees next contend that the "legislative history of the Act fails to reveal any congressional intent to displace or preempt existing state laws" intended for the protection of females.

The legislative history shows that Congress was aware that Title VII would conflict with some state labor laws. See 110 Cong. Rec. 2577, 2578, 2580, 2583 and 2732. Moreover, Section 2000e-7, entitled "Effect on State Laws," was designed to preempt state laws which purport to require or permit the doing of any act which would be an unlawful employment practice as defined in Title VII. Although this section does not preempt all state labor laws (see *Bowe* v. *Colgate-Palmolive Co., supra* [416 F. 2d 711], at page 716), it specifically preempts those which compel unlawful employment practices as defined by Title VII.

Additionally, appellees contend that the guidelines established by the Equal Employment Opportunity Commission (herein E. E. O. C.) interpreting the "bona fide occupational qualifications" exception (herein BFOQ) are unreasonable.[8] Similarly, appellees argue that a legislatively determined classification, if reasonable, may be the basis for a BFOQ. This court rejects that contention.

Section 2000e-2(e), Title 42, U. S. Code, provides:

"Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees * * * on the

---

[7]The saving clause was already in the Bill as early as November 1963, while the word sex was added by amendment on February 8, 1964. 110 Cong. Rec. 2577.

[8]Appellees also state that because of the inconsistent interpretations given to the BFOQ exception by the E. E. O. C., it should not be accorded any weight in the court's decision.

basis of * * * sex * * * in those certain instances where * * * sex * * * is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise * * *.''

The E. E. O. C. has taken the position that state protective legislation like that in the instant case conflicts with the command of Title VII. In its amended guidelines (Section 1604.1, 29 C. F. R.), the E. E. O. C. states:

''(b)(1) Many states have enacted laws * * * with respect to the employment of females. Among these laws are those which prohibit or limit the employment of females * * * in certain occupations, in jobs requiring the lifting or carrying of weights exceeding certain prescribed limits, during certain hours of the night, or for more than a specified number of hours per day or per week.

''(2) The commission believes that such state laws * * * have ceased to be relevant to our technology or to the expanding role of the female worker in our economy. The commission has found that such laws * * * do not take into account the capacities, preferences, and abilities of individual females and tend to discriminate rather than protect. Accordingly, the commission has concluded that such laws * * * conflict with Title VII * * * and will not be considered * * * as a basis for the application for the bona fide occupational qualification exception.''

Courts, when interpreting statutes, are required to give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which agency Congress has delegated the responsibility of implementing the congressional command. *Griggs* v. *Duke Power Co.* (1971), 401 U. S. 424, 28 L. Ed. 2d 158; *Udall* v. *Tallman* (1965), 380 U. S. 1; *Phillips* v. *Martin Marietta Corp.*, *supra* (400 U. S. 542, concurring opinion by Marshall, J.).

After examining the regulations and the cases interpreting the BFOQ exception, this court concludes that a legislatively determined BFOQ is inconsistent with the

182

principle of nondiscrimination.⁹ "Construed that broadly, the exeception would swallow the rule." *Weeks* v. *Southern Bell T. & T. Co.*, *supra* (408 F. 2d 228), at page 235. "Equality * * * is established only if employees otherwise entitled to the position, whether male or female, are excluded only upon a showing of individual incapacity." *Rosenfeld* v. *Southern Pacific Co.*, *supra* (444 F. 2d 1219), at page 1225. "This even-handed policy alone complies with the congressional purpose of eliminating subjective assumptions and traditional stereotyped conceptions pertaining to the physical ability of women." *Manning* v. *General Motors Corp.*, *supra* (3 E. P. D., paragraph 8325), at page 158. Granting benefits or privileges to one sex while withholding them from the other cannot be done consistently with Title VII.

This court also finds, as other courts have, that the E. E. O. C.'s guidelines are not unreasonable.¹⁰ While the specific wording interpreting the BFOQ exception was changed in 1969, the substantive interpretation was not. The E. E. O. C. acknowledged that some female protective laws could be the basis for a BFOQ, but "where the clear effect of a law in current circumstances is not to protect women but to subject them to discrimination, the law will not be considered a justification for discrimination." 30 F. Reg. 14926 (1965). This court does not find that the E. E. O. C. policies are inconsistent, nor does it find that they have been inconsistently applied.

⁹See *Caterpillar Tractor Co.* v. *Grabiec* (S. D. Ill. 1970), 317 F. Supp. 1304; *General Electric* v. *Young* (W. D. Ky. 1971), 3 F. E. P. cases 560; *Leblanc* v. *Southern Bell T. & T. Co.* (E. D. La. 1971), 3 F. E. P. cases 1083; *Garneau* v. *Raytheon Co.* (D. C. Mass. 1971), 323 F. Supp. 391; *Rinehart* v. *Westinghouse Elec. Corp.* (N. D. Ohio 1971), 2 F. E. P. cases 851; *Richards* v. *Griffith Rubber Mills* (D. C. Ore. 1969), 300 F. Supp. 338; *Kober* v. *Westinghouse* (W. D. Pa. 1971), 325 F. Supp. 467.

¹⁰The court found no case in which the E. E. O. C.'s guidelines were determined to be unreasonable. While some courts specifically found them reasonable (*e. g. Manning* v. *General Motors Corp.*, *supra* [3 E. P. D., paragraph 8325]), others which gave due deference to the guidelines at least tacitly approved their reasonableness.

The court has examined appellees' other arguments and finds them to be without merit.

Therefore, this court holds that R. C. 4107.42, 4107.-43, 4107.46(A), 4107.46(B) and 4107.46(E) are in conflict with Title VII and cannot be enforced consistent with the principle of nondiscrimination expressed by Title VII. To the extent that R. C. 4107.48 and 4107.49 implement those statutes, they are also of no further force and effect. Finally, to the extent that subsections (M) and (N) of R. C. 4107.99 impose penalties for violations of R. C. 4107.42, 4107.43, 4107.46(A), 4107.46(B), 4107.46(E), 4107.48 and 4107.49, such subsections are of no further force and effect.  Section 2000e-7, Title 42, U. S. Code.

Therefore, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

HERBERT, CORRIGAN, STERN, LEACH and BROWN, JJ., concur.

SCHNEIDER, J., concurring. I agree with the reversal, but for the reason that this action is not maintainable in a state court on the basis of the federal Supremacy Clause.

Under these circumstances, a state court has only one *effective* choice for decision. To hold that state statutes do *not* conflict with federal law is to run headlong into an "unpleasant collision" with the insurmountable wall of federal judicial supremacy. See *In re Socotch,* 66 Ohio Law Abs. 232.

"The risk that parties will be placed in jeopardy of facing the enforcement against them of contradictory judgments . . . was the foundation for the rule of" comity between courts of concurrent jurisdiction. *State, ex rel. Hannan,* v. *DeCourcy* (1969), 18 Ohio St. 2d 73, 81. It should also be the basis for dismissal in a case such as this.