MINNESOTA MINING & MANUFACTURING COMPANY, d.b.a. 3M,

v.

OHIO DEPARTMENT OF PUBLIC SAFETY et al.

Court of Claims of Ohio.

No. 98–06401.

Decided Dec. 7, 2000.

*Luther L. Liggett, Jr.*, for plaintiff.

*Betty D. Montgomery*, Attorney General, *Susan M. Sullivan* and *Chester T. Lyman, Jr.*, Assistant Attorneys General, for the Ohio Department of Public Safety.

*Stephen D. Jones*, for intervening defendant Avery Dennison.

FRED J. SHOEMAKER, Judge.

The issues in this case were bifurcated and a hearing was held on the second motion of plaintiff, Minnesota Mining and Manufacturing ("3M"), for preliminary and permanent injunctive relief. The court also heard 3M's motion to find defendant, the Ohio Department of Public Safety ("ODPS"),[1] in contempt.

The following background is pertinent to the status of the case as presented at the injunction hearing.

3M originally brought this action on June 18, 1998. At that time, 3M sought declaratory judgment, monetary damages, and an injunction to prohibit the state from contracting with Avery Dennison[2] ("Avery") to supply reflective sheeting for the manufacture of Ohio motor vehicle license plates.

3M had been the exclusive supplier of reflective sheeting in the state of Ohio since at least 1979. Because it was believed to be the sole source provider, 3M had contracted with the state for many years through a waiver of competitive bidding. In that fashion, the state had approved, in May 1997, a two-year purchase authority from 3M, in the amount of $5 million per year, lasting through June 30, 1999. However, as part of the state's on-going effort to procure license plate sheeting on a competitive basis, it also issued an invitation to bid on November 18, 1997. Both 3M and Avery submitted bids. The bid specifications required that each vendor's product pass certain tests in accordance with Ohio Adm.Code 4501–27–01 in order to be accepted. The state then contracted with CTL Engineering Inc. ("CTL") to conduct the required tests. On April 27 and 29, 1998, CTL issued reports indicating that neither bidder passed all the tests. Accordingly, the bids were rejected and the invitation to bid was canceled.

Although the first attempt at competitive bidding was unsuccessful, the state had nevertheless gained valuable information about the materials available, and the prices at which they could be obtained. For example, the price of Avery's

---

1. The Ohio Department of Public Safety is the only named defendant herein; however, numerous state agencies are involved in the events that give rise to this action. For example, the Ohio Bureau of Motor Vehicles, the Ohio Department of Administrative Services, the State Controlling Board, the Ohio Department of Rehabilitation and Correction and Ohio Penal Industries. Issues have been raised as to whether plaintiff failed to join all necessary parties, and those issues will be addressed at the appropriate time. For ease of reference, defendant and the various state agencies are referred to collectively in this writing as "the state," except where a specific name is needed for clarity.

2. Avery was not a party to these proceedings at the time of the original action, but was granted leave to intervene following plaintiff's appeal to the Tenth District Court of Appeals, and pursuant to the December 17, 1998, decision issued by that court. *Minnesota Mining & Mfg. Co. v. Ohio Dept. of Public Safety* (Dec. 18, 1998), Franklin App. No. 98AP–1184, unreported, 1998 WL 961045.

product was substantially lower than 3M's. Additionally, during its investigation into other potential suppliers, the state had discovered that the machinery needed to apply the license plate sheeting was available from another vendor. In previous years, 3M had maintained its advantage in the industry largely because it was the only manufacturer of the application equipment, and because it did not sell its equipment to its consumers. Ultimately, the state obtained its own application equipment from J.R. Wald Company. At that point, the state was ostensibly prepared to begin use of an alternative license plate sheeting.

In early June 1998, notwithstanding its purchase authority with 3M through June 30, 1999, the state sought controlling board authority for the purchase of license plate sheeting from Avery through a waiver of competitive bidding. That authority was obtained and, on July 1, 1998, a six-month contract went into effect with Avery, for the amount of $1,690,370.

When 3M filed its case on June 18, 1998, it alleged that the state had abused its discretion in awarding a contract to Avery rather than purchasing reflective sheeting under its existing authority with 3M. It also alleged that the state had failed to re-test Avery's sheeting product to determine whether it complied with the specifications set forth under Ohio Adm.Code 4501–27–01. Therefore, 3M requested a declaratory judgment that the testing requirements were not discretionary and that by law the state was required to determine prior to use whether a reflective sheeting product complied with state and federal standards. 3M also sought preliminary and permanent injunctions preventing the award of a contract for an allegedly noncomplying product.

On July 2, 1998, this court issued an entry denying 3M's motion for preliminary and permanent injunctions. The court declined to issue a preliminary injunction because it found that 3M had failed to prove that it likely or probably would succeed on the merits of its claim. The court held that the Ohio Department of Administrative Services ("ODAS") had discretion to grant a release and to permit purchases without a competitive bid, that it had not abused its discretion, and that ODPS had complied with all statutory requirements in obtaining the release from ODAS. The court further found that 3M would not suffer the requisite irreparable harm to justify injunctive relief.

On appeal to the Tenth District Court of Appeals, this court's judgment was reversed and the cause was remanded. The court stated:

"Taken as a whole, the foregoing regulations [Ohio Adm.Code 4501–27–01] not only suggest testing, but suggest that it be done before manufacture and issuance of the license plates and stickers. Indeed, testing after the manufacture and issuance of license plates poses potential problems for law enforcement, for whose benefit the regulation presumably is intended. By potentially impeding effectiveness of law enforcement, violation of the regulation impacts on the safety of the

public. Moreover, testing after manufacture and issuance creates potential, unnecessary litigation and complications in the distribution of a non-complying product.

" * * * The trial court should have found in declaratory relief that the regulation requires ODPS to conduct testing on reflective coating materials supplied under Ohio Adm.Code 4501–27–01 before license plates are manufactured and distributed.

"3M's request for injunctive relief was premised on precluding the department from granting the contract to Avery Dennison. While Ohio Adm.Code 4501–27–01 does not preclude the department from granting the bid to Avery Dennison, it prevents the department from manufacture and determination [sic] of license plates until the testing shows compliance with the regulation. Because 3M did not request injunctive relief of that nature, and may decide not to seek that relief, we are reluctant to grant such an injunction. Nonetheless, because this matter must be returned to the trial court to implement the declaratory relief granted by this court, the parties at that time will have the opportunity to amend pleadings to seek any further injunctive relief appropriate, and to further consider Avery Dennison as an intervenor because of its interest in the ongoing litigation." *Minnesota Mining & Mfg. Co. v. Ohio Dept. of Pub. Safety* (Dec. 18, 1998), Franklin App. No. 98AP–1184, unreported, 1998 WL 961045 at *4.

On February 1, 1999, the state filed an appeal to the Supreme Court of Ohio. Thereafter, plaintiff petitioned the court of appeals and, on February 17, 1999, obtained an injunction pending the outcome of the state's appeal. The injunction states:

" * * * Appellee [ODPS] is hereby enjoined from the manufacture, distribution, sale, or other use of plates which do not contain reflection coating which has been tested in accordance with Ohio Adm.Code 4501–27–01, until such time as the Supreme Court finally determines appellee's appeal."

On April 28, 1999, the Supreme Court declined to hear the merits of the state's appeal. 85 Ohio St.3d 1467, 709 N.E.2d 173.

On October 29, 1999, 3M again sought injunctive relief from this court. It also filed a motion to find defendant in contempt, and a demand for monetary damages. The complaint was amended to include a request for a permanent injunction. After Avery was granted leave to intervene and allowed to file its answer, the case was scheduled for the injunction hearing that is the subject of this decision.

The court of appeals has mandated the extent to which declaratory relief should be granted. In response, the court notes that Ohio Adm.Code 4501–27–01 requires the state, through the Ohio Department of Public Safety, to conduct

testing on reflective coating materials supplied under that regulation before license plates are manufactured and distributed. That being the case, the pivotal issue to be determined is whether the state conducted testing in accordance with Ohio Adm.Code 4501–27–01 and the court of appeals' decision. While issues exist as to whether 3M has standing to seek this relief, this is the specific injunction 3M is asking this court to issue. Essentially, it is the same injunctive relief that was granted by the court of appeals on February 17, 1999.

Ohio Adm.Code 4501–27–01 provides:

"(A) This chapter contains the specifications for the manufacture of license plates for the state of Ohio.

"(B) The license plates shall consist of a substrate of a material designated by the director of public safety, with an application of white or white blended with another color retroreflective multi-year sheeting, which shall constitute the background color of the license plate. The color of the lettering and numbers and the design of the plate shall be designated by the director. The finished license plate may contain a logo, inscription, or other design as designated by the director.

"(C) The substrate of the license plate shall have a minimum service life of five years.

"(D) The retroreflective sheeting shall have sufficient adherence to the substrate to remain firmly attached during the license plate manufacturing process and for a minimum service life of five years.

"(E) The photometric retroreflective performance values of the white sheeting, when new, shall be between fifty minimum and eighty maximum, with no reading less than fifty nor more than eighty as described below:

"* * *

"Measurements shall be computed in accordance with standard photometric procedure as specified in federal specifications LS 300 C, as amended, and shall be expressed as candlepower/foot-candle/square foot. The white retroreflective sheeting shall retain a minimum photometric retroreflective performance value of fifty per cent of the original candlepower/foot-candle/square foot rating at the end of five years under normal use and conditions on a passenger vehicle. In no case shall the minimum test using clean rear license plates be less than twenty-five candlepower/foot-candle/square foot."

 This case turns upon interpretation of this regulation and, specifically, the extent and manner of testing required. The arguments focus on subsections (D) and (E). Subsection (D), the so-called "durability" requirement, states that the sheeting must have sufficient adherence to remain firmly attached to the license

plate for a minimum service life of five years. Subsection (E), the "reflectivity" requirement, sets forth the photometric retroreflective performance values for the sheeting and includes a subsection requiring that measurements be computed in accordance with federal specifications LS 300 C. 3M maintains that testing in accordance with LS 300 C standards and the American Society for Testing and Materials ("ASTM")[3] specifications are mandated for both durability, under subsection (D), and reflectivity, under section (E).

It is the durability portion of the tests that Avery failed in early 1998 when CTL conducted testing in connection with the November 18, 1997 invitation to bid. 3M's position is that the state ignored the durability requirements when it sought its waiver of competitive bidding and subsequently entered into the contract with Avery that commenced on July 1, 1998. It is further alleged that the state has done nothing in response to the court of appeals' decision and that proper testing of Avery's product has never been conducted. In opening statements, counsel stated that 3M is simply seeking a "level playing field." It wants the tests done, and, if Avery passes the tests, 3M will accept that. However, 3M's view is that, if the state conducts proper testing, it cannot award a contract to Avery because Avery's product will not meet the requisite standards.

The court has reviewed the evidence and has carefully read both the court of appeals' decision and the Ohio Administrative Code. As stated at the hearing, this court has made every effort to understand and carry into effect the intent of the opinion of the court of appeals. Having thoroughly considered all the materials submitted herein, this court makes the following determination.

The court finds that the LS 300 C and ASTM testing requirements relate only to subsection (E), the reflectivity requirement, and that the state has conducted all the testing of Avery's product required under 4501–27–01 and the court of appeals' decision. Although the state did require, and attempted to conduct, durability testing in accordance with the LS 300 C and ASTM requirements in connection with the November 18, 1997 invitation to bid, there is nothing this court can find in the regulation itself that suggests such testing is mandatory. To the contrary, the only reference to federal testing is contained in the subsection to requirement (E), where it is stated that "[m]easurements shall be computed *in accordance with standard photometric procedure as specified in * * * LS 300 C*." (Emphasis added.) Clearly, this requirement can only encompass reflectivity testing.

---

3. The LS 300 C standards expressly adopt the American Society for Testing Materials specifications, including, for example, Standard for Salt Spray test, Standard for Solvent Resistence, Standard Testing for Coating Thickness, and Standard Test for Impact Resistance.

Furthermore, the evidence demonstrates that, when the state received the CTL test results on April 27 and 29, 1998, and learned that both 3M and Avery's products had failed some aspects of the durability testing, it was subsequently agreed that either the test samples had been improperly prepared or that the testing procedure utilized had been faulty. Consequently, when the controlling board granted a waiver of competitive bidding and authority to purchase from Avery in June 1998, it came with the caveat that the state would develop new specifications for a competitive bid.

It must also be considered that Ohio law requires that license plates be manufactured with a steel substrate and that both the Avery and 3M sheeting products are designed to be applied to an aluminum substrate. The evidence shows that durability testing is impractical, if not impossible, because of this fact. According to Bruce Watts, Chief of Purchasing for the Ohio Department of Transportation ("ODOT"), no outside lab has developed a test that is guaranteed to accurately measure durability for a five-year period. In order to protect the state's interests in this regard, durability warranties were obtained and written into the Avery contract. The state has shifted from a testing-based bid to a warranty-based bid for the invitation to bid that issued on September 22, 1998. The court finds these warranties are sufficient to ensure the quality and performance of the Avery license plates and, under the circumstances, are the only reasonable means of ensuring compliance with 4501–27–01.

With regard to the state's compliance with the December 18, 1998 court of appeals' decision, the evidence shows that representatives of the state of Ohio and the Ohio Bureau of Motor Vehicles (BMV), including Frank Caltrider, the BMV Registrar, and Bruce Watts of ODPS, reviewed the requirements set forth in Ohio Adm.Code 4501–27–01 to determine what testing should be conducted. Both Caltrider and Watts consulted with BMV legal counsel, John Guldin, who had drafted the administrative rule, to determine what, if any, testing on license plate sheeting must be done prior to distribution and sale of license plates. The conclusion reached was that testing was necessary only in accordance with Ohio Adm.Code 4501–27–01(E).

On February 8, 1999, prior to the issuance of the February 17, 1999 injunction, ODPS engaged Intertek Testing Services ("Intertek") to conduct testing for photometric reflective performance for Avery license plate sheeting. On February 23, 1999, ODPS submitted a 3M sample license plate for testing. Intertek was instructed to determine the photometric reflective performance of both samples within a range of fifty (minimum) and eighty (maximum) candlepower/foot-candle/square-foot for white reflective sheeting in accordance with the requirements of Ohio Adm.Code 4501–27–01(E).

On February 28, 1999, Intertek submitted its written report, indicating the testing results of the Avery sheeting. This report revealed that the reflective performance of Avery's sheeting was sixty-five, falling within the acceptable range of fifty to eighty set forth in Ohio Adm.Code 4501–27–01(E). On March 3, 1999, Intertek submitted the test results of the 3M product, which indicated a noncompliant reflective performance of ninety-nine. The significance of reflective sheeting exceeding the maximum upper limit of eighty is that if reflectivity is too high, numbers on the plates can be "washed out." However, 3M adamantly contests the validity of this result.

Finally, pursuant to R.C. 4503.22, the General Assembly has entrusted the Director of ODPS with the responsibility of adopting "specifications" regarding the reflectivity of license plates in Ohio. Accordingly, the Director has adopted Ohio Adm.Code 4501–27–01, setting forth minimum performance standards for reflectivity and durability. In *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* (1994), 68 Ohio St.3d 377, 382, 627 N.E.2d 538, 542, the Ohio Supreme Court recognized that an administrative rule adopted pursuant to statutory authority has the force of law unless it is unreasonable or conflicts with another statute. This court finds that neither circumstance is the case here. While the state cannot ignore the testing required for reflectivity, or the declaratory judgment to that effect, the court finds it is well within the discretion of the Director of ODPS to determine what testing is required for license plate sheeting prior to the manufacture and distribution of license plates.

In *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 151, 545 N.E.2d 1260, 1266, the Ohio Supreme Court further stated that a state agency's interpretation of its own rules is "[t]he product of administrative experience, appreciation of the complexities of the problem, realization of the statutory policies and responsible treatment of the facts. It is the type of judgment which administrative agencies are best equipped to make and for which the administrative process is most appropriate. See *Republic Aviation Corp. v. Natl. Labor Relations Bd.* (1945), 324 U.S. 793, 800 [65 S.Ct. 982, 986, 89 L.Ed. 1372, 1377–1378]. It is a judgment we should not disturb."

■ Accordingly, this court must defer to the ODPS's interpretation of the rule it is required to administer, absent a showing of abuse of discretion. *State ex rel. Celebrezze v. Natl. Lime & Stone Co., supra; Jones Metal Products Co. v. Walker* (1972), 29 Ohio St.2d 173, 181, 58 O.O.2d 393, 398, 281 N.E.2d 1, 8.

In summary, the court finds, by way of declaratory judgment, that the state is required to test license plate sheeting in accordance with Ohio Adm.Code 4501–27–01 prior to manufacture or distribution of license plates. However, the court interprets the regulation as requiring testing in accordance with LS 300 C and

ASTM standards only with respect to reflectivity. Even if the court did not so hold, the court would give due deference to the state's interpretation of the regulation, as requiring testing only of that nature. Further, even assuming that the regulation could be interpreted to require the full battery of testing according to LS 300 C and ASTM standards for durability, the court is persuaded by the evidence that it would be impractical, if not impossible, to do so because of the steel substrate that is required, and because the present standards have been shown to be an inappropriate determinant of durability for license plate sheeting. The court finds that, until new standards are developed, the warranty-based bid method is the best and most reasonable means of protecting the state's interest.

For these reasons, and because Avery's product has consistently passed the required reflectivity testing, the court concludes that the tests conducted by the state have fully met the requirements of Ohio Adm.Code 4501–27–01 and the court of appeals' decision.

In light of the foregoing, the court finds all other issues raised at the injunction hearing are moot. Specifically, having found that all required testing has been conducted, it is unnecessary to discuss whether 3M met the requirements for obtaining injunctive relief, whether all necessary parties were joined in this action, or whether the state should be held in contempt.

Accordingly, 3M's request for preliminary and permanent injunctive relief, and for a finding of contempt, is denied.

### Judgment Entry

The court has considered the evidence and rendered a decision filed concurrently herewith. Declaratory judgment is entered to the effect that defendant, ODPS, is required to conduct testing on reflective coating materials supplied under Ohio Adm.Code 4501–27–01 before license plates are manufactured and distributed. The court has found that all testing required pursuant to that regulation has been conducted. Accordingly, plaintiff's motion for preliminary and permanent injunctive relief is denied. Plaintiff's motion to find defendant in contempt is also denied. Pursuant to Civ.R. 54(B), the court finds there is no just cause for delay.

*Judgment accordingly.*

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.