OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, Appellant's brief, and Appellant's oral argument before this Court. Appellant, Ohio Department of Job and Family Services (ODJFS), appeals the decision of the Belmont County Court of Common Pleas that reversed and remanded an administrative appeal decision concerning appellee Marguerite L. Howell's eligibility for Medicaid nursing home vendor payments.
 {¶ 2} On appeal, ODJFS argues that the trial court erred in its interpretation and application of several administrative regulations. Specifically, ODJFS contends that, contrary to the trial court's ruling, Howell neither met the "traumatic onset of disability exception," pursuant to Ohio Adm. Code 5101:1-39-07(D)(3), nor adequately demonstrated that continued denial of Medicaid nursing home vendor payments would pose an "undue hardship" pursuant to Ohio Adm. Code 101:1-39-07(N).
 {¶ 3} Upon review of the record, ODJFS's arguments are meritorious. First, the trial court misinterpreted the traumatic onset of disability exception found in Ohio Adm. Code 5101:1-39-07(D)(3)(a). The example provided in this rule indicates it applies in cases where the onset of disability was sudden and unexpected, and not, as the trial court found, where the applicant's health had predictably deteriorated over time. As a result of this improper interpretation, the trial court misapplied the exception to Howell's case. Moreover, even absent the incorrect interpretation, the trial court erred in applying the exception to Howell's case, because the transfer of resources occurred after the alleged traumatic onset of disability, not before, as required by Ohio Adm. Code 5101:1-39-07(D)(3).
 {¶ 4} In addition, the trial court abused its discretion in finding that Howell qualified for an undue hardship exemption pursuant to Ohio Adm. Code 5101:1-39-07(N). Section (3) of that provision lists specific requirements that an applicant must satisfy in order to qualify for the exemption. The trial court did not discuss these requirements in its opinion. Moreover, there is no evidence in the record to show that Howell met or even attempted to meet the requirements. As such, the trial court's conclusion that Howell qualified for an undue hardship exemption was unreasonable and therefore an abuse of discretion. *Page 2 
 {¶ 5} Accordingly, the judgment of the trial court is reversed and the Administrative Appeal Decision of the ODJFS dated July 27, 2007 is reinstated.
 Facts {¶ 6} On September 1, 2006, Howell applied for Medicaid. At that time, she was approximately 82 years old, and had been residing in a Belmont County nursing home since July 2006 due to a broken hip and other health problems. Prior to that, Howell had two other nursing home stays: one in 2002 and another in 2004, both due to broken hips. Although she was able to return home following those previous nursing home stays, she required help from her daughters in order to perform many regular activities.
 {¶ 7} In response to her Medicaid application, the Belmont County Department of Job and Family Services authorized restricted Medicaid coverage, but temporarily denied nursing home vendor payments due to three improper transfers that Howell made prior to applying for benefits.
 {¶ 8} One of the improper transfers, in fact, the only one that is relevant for the purposes of this appeal, involved $20,000 worth of certificates of deposit that Howell transferred to her two daughters prior to filing for Medicaid. It is undisputed that Howell added the names of her two daughters to those certificates of deposit in August 2005, and then removed her own name from them in August 2006.
 {¶ 9} On January 29, 2007, Howell requested a hearing as a result of the agency's adverse determination. Howell argued that the transfer of the certificates of deposit was not improper because those certificates represented payment to her two daughters in connection with in-home care they provided her for several years pursuant to a caregiver's agreement. The state hearing officer nonetheless determined that the transfer of the certificates of deposit was improper.
 {¶ 10} Howell appealed. In a decision dated May 22, 2007, the administrative appeal examiner found the hearing decision failed to adequately address and analyze the improper transfer issue. The appeals examiner thus vacated the hearing decision and remanded the case for a supplemental hearing and supplemental decision.
 {¶ 11} On remand, the hearing officer concluded that the evidence Howell provided *Page 3 
about the alleged caregiver's agreement with her daughters was not enough to rebut presumption of an improper transfer. Further, the hearing officer examined the issue of whether the traumatic onset of disability exception could apply to Howell's case, but ultimately determined that Howell did not qualify for this exception, because Howell's "nursing home placement did not meet the common sense definition of a traumatic onset." Howell appealed, and the administrative appeal examiner affirmed the second state hearing decision.
 {¶ 12} Howell then appealed to the Belmont County Court of Common Pleas pursuant to R.C. 5101.35 and 119.12. In her brief to that court, Howell argued she had presented clear, convincing evidence to rebut the presumption of an improper transfer. Alternatively, she argued that pursuant to Ohio Adm. Code 5101:1-39-07(D)(3)(a), the traumatic onset of disability exception should apply. In addition, she argued, for thefirst time, that even if the transfer was improper, she should be exempt from the period of restricted coverage because it created an undue burden pursuant to Ohio Adm. Code 5101:1-39-07(N).
 {¶ 13} In a judgment entry dated July 22, 2008, the trial court found that Howell failed to rebut the presumption of an improper transfer by clear and convincing evidence. However, the court agreed with Howell's other arguments, specifically ruling that Howell should not be subject to restricted coverage because she met the traumatic onset of disability exception and because continued denial of Medicaid nursing home vendor payments would pose an undue hardship. The court therefore remanded the case to the agency "with direction to enter a ruling taking into consideration factors which may have changed in the interim period as well as the specific rulings entered in the Court's Opinion."
 {¶ 14} ODJFS filed a timely notice of appeal from that judgment with this court on August 18, 2008. ODJFS also moved the trial court for a stay pending appeal, which the court granted. ODJFS filed its brief, however, Howell failed to reply. *Page 4 
 Medicaid Eligibility {¶ 15} The Medicaid program was established in 1965 under Title XIX of the Social Security Act, codified at Section 1396 et seq., Title 42, U.S. Code. The purpose of the program is to provide "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae (1980), 448 U.S. 297, 301,100 S.Ct. 2671, 65 L.Ed.2d 784; see, also, Wisconsin Dept. of Health Family Servs. v. Blumer (2002), 534 U.S. 473, 479, 122 S.Ct. 962,151 L.Ed.2d 935. It is a "cooperative federal-state program" that is jointly financed with federal and state funds for those states that choose to participate. Wilder v. Virginia Hosp. Assn. (1990), 496 U.S. 498, 501,110 S.Ct. 2510, 110 L.Ed.2d 455. A participating state is required to develop reasonable standards for determining eligibility consistent with the Act. Section 1396(a)(17), Title 42, U.S. Code.
 {¶ 16} Ohio participates in the Medicaid program, and its eligibility requirements are codified at R.C. 5111.01 et seq. R.C. 5111.01
authorizes ODJFS to act as the sole state agency to supervise the administration of the Medicaid program, and to promulgate rules relating to program eligibility.
 {¶ 17} In order to qualify for Medicaid in Ohio, an applicant can have no more than $1,500 in countable resources. Ohio Adm. Code 101:1-39-05(B)(11). A resource is defined as "cash and any other personal property, as well as any real property, that an individual * * * owns, has the right, authority, or power to convert to cash (if not already cash), and is not legally restricted from using for his support and maintenance." Ohio Adm. Code 5101:1-39-05(B)(10).
 {¶ 18} The agency is required to review any transfer of resources made during the "look-back period" and determine whether such transfer was "improper." Ohio Adm. Code 5101:1-39-07(B)(9). At the time Howell applied for Medicaid the applicable "look-back period" was thirty-six months prior to the application date. Former Ohio Adm. Code 5101:1-39-07(A)(6), 2002-2003 Ohio Monthly Record 963 (R-E), eff. Nov. 7, 2002.
 {¶ 19} If the agency finds that an improper transfer was made during the look-back period, it will impose a period of restricted coverage, the length of which is based upon *Page 5 
the dollar amount of the improper transfer. Ohio Adm. Code 101:1-39-07(J). Restricted coverage means that an applicant is eligible for certain covered Medicaid services, such as office visits, medications and durable medical equipment, but is temporarily ineligible for nursing home vendor payments. Ohio Adm. Code 5101:1-39-07(I).
 {¶ 20} An "improper transfer" means "a transfer * * * of a legal or equitable interest in a resource for less than fair market value for the purpose of qualifying for medicaid, a greater amount of medicaid, or for the purpose of avoiding the utilization of the resource to meet medical needs or other living expenses." Ohio Adm. Code 5101:1-39-07(B)(5).
 {¶ 21} Under Ohio Adm. Code 5101:1-39-07(C), some types of transfers are presumed improper, including, "any transfer that reduces the applicant's resources and brings the value of their remaining resources within the resource limit." Ohio Adm. Code 5101:1-39-07(C)(1). The applicant may rebut the presumption of an improper transfer, but must do so with clear, convincing, and credible evidence. Ohio Adm. Code 101:1-39-07(D)(2).
 {¶ 22} R.C. 5101.35 governs judicial review of administrative appeal decisions issued by ODJFS and authorizes appellants who disagree with an administrative appeal decision of the director of ODJFS to appeal to the court of common pleas of the county in which they reside pursuant to R.C. 119.12. R.C. 5101.35(E).
 {¶ 23} R.C. 119.12 states that the common pleas court must examine the entire record and affirm the agency's decision if it "is supported by reliable, probative, and substantial evidence and is in accordance with law." See, also, University of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 109-10, 17 O.O.3d 65, 407 N.E.2d 1265.
 {¶ 24} A common pleas court's review of an agency decision is "a hybrid: neither strictly of law nor of law and fact. While not a trial de novo, the common pleas court must nonetheless `read and consider all the evidence offered by both sides and must appraise all of the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Hummel v. Ohio Dept. of Job FamilyServ., 164 Ohio App.3d 776, 2005-Ohio-6651, 844 N.E.2d 360, at ¶ 21, quoting Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280,58 O.O. 51, 131 N.E.2d 390. With respect to *Page 6 
purely legal questions, however, the common pleas court exercises plenary review. See Ohio Historical Soc. v. State Emp. RelationsBd. (1993), 66 Ohio St.3d 466, 471, 1993-Ohio-182, 613 N.E.2d 591.
 {¶ 25} The court of appeals has an even more limited review with respect to factual determinations made by the common pleas court; the standard of review is an abuse of discretion. Pons v. Ohio State Med.Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-122, 614 N.E.2d 748. Abuse of discretion means the trial court acted in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 5 OBR 481, 450 N.E.2d 1140. "A common pleas court abuses its discretion when its decision is without a reasonable basis or is clearly wrong." Abdalla's Tavern v. Dept. of Commerce, Div. of State FireMarshall, 7th Dist. No. 02JE34, 2003-Ohio-3295, at ¶ 51, citingReese v. Copley Twp. Bd. of Trustees (1998), 129 Ohio App.3d 9, 13,716 N.E.2d 1176. However, like the common pleas court, the court of appeals also exercises de novo review over questions of law. Big Bob's, Inc. v.Ohio Liquor Control Comm., 151 Ohio App.3d 498, 2003-Ohio-418,784 N.E.2d 753, at ¶ 15.
 {¶ 26} Further, all reviewing courts must give due deference to "an administrative agency's interpretation of its own rules and regulations if such an interpretation is consistent with statutory law and the plain language of the rule itself." OPUS III-VII Corp. v. Ohio State Bd. ofPharmacy (1996), 109 Ohio App.3d 102, 113, 671 N.E.2d 1087, citingJones Metal Products Co. v. Walker (1972), 29 Ohio St.2d 173, 181, 58 O.O.2d 393, 281 N.E.2d 1.
 Traumatic Onset of Disability Exception {¶ 27} In its first of two assignments of error, ODJFS argues:
 {¶ 28} "The Lower Court Erred When It Concluded That Ms. Howell Met the `Traumatic Onset of Disability' Exception In the Improper Transfer Rule."
 {¶ 29} There is an exception to the improper transfer rule for applicants who experienced a traumatic onset of disability. This rule is set forth in Ohio Adm. Code 5101:1-39-07(D)(3)(a). ODJFS argues that the trial court improperly interpreted this regulation and as a result, improperly applied it to Howell's case. As this presents a *Page 7 
question of law that relates to the interpretation and application of an administrative code section we will exercise de novo review.
 {¶ 30} Ohio Adm. Code 5101:1-39-07(D)(3) states, in pertinent part:
 {¶ 31} "[t]he occurrence after a transfer of resources of one or more of the following, while not conclusive, may indicate resources were transferred exclusively for some purpose other than establishing Medicaid eligibility: (a) traumatic onset of disability or blindness (e.g. due to a traffic accident)."
 {¶ 32} At the agency level, the administrative appeal examiner concluded that this exception did not apply to Howell's case, stating:
 {¶ 33} "The appellant argues that she meets the exception to the rule under (a) above, as the appellant's decline represents a traumatic onset of disability. We must agree with the hearing officer, however, that the institutionalization of appellant, an eighty-three year old woman, who was dependent in all her activities of daily living except eating, and who has suffered repeated broken bones, hardly represents a traumatic onset of disability, but is more indicative of a slow deterioration of her condition."
 {¶ 34} The trial court, however, determined that the 5101:1-39-07(D)(3) exception did apply to Howell's case. Specifically, the court stated:
 {¶ 35} "[A]n eighty-three year old woman who breaks her hip twice and then breaks it still another time is not simply experiencing the expected downhill deterioration common to a woman her age; and that injuries are not less traumatic simply because the age of the patient is an indicia of their likelihood.
 {¶ 36} "The Court further finds that the rule set forth in OAC 5101:1-39-07(D)(3) is designed to protect someone just like Mrs. Howell."
 {¶ 37} Thus, it seems that the agency and the trial court had different interpretations of what was meant by "traumatic onset of disability." The trial court interpreted this exception to include situations where an applicant's condition had deteriorated over a period of time. By contrast, the agency had a very different interpretation of Ohio Adm. Code 5101:1-39-07(D)(3). The hearing officer found that Howell's nursing home placement, which occurred as a result of her deteriorating *Page 8 
condition, "did not meet the common sense definition of a traumatic onset of disability * * *." The administrative appeal officer agreed that a deterioration in condition over time "hardly represents a traumatic onset of disability." Similarly, on appeal ODJFS insists that Ohio Adm. Code 5101:1-39-07(D)(3) is designed to protect someone who transferred resources but had no expectation of needing Medicaid in the near future; thus precluding someone whose condition has deteriorated over time from utilizing the exception.
 {¶ 38} Based on the plain language of Ohio Adm. Code 101:1-39-07(D)(3), we find that ODJFS's interpretation is correct. As stated above, we must give due deference to "an administrative agency's interpretation of its own rules and regulations if such an interpretation is consistent with statutory law and the plain language of the rule itself." OPUS III-VII Corp., 109 Ohio App.3d at 113.
 {¶ 39} The example of a "traumatic onset of disability" provided within Ohio Adm. Code 5101:1-39-07(D)(3), is one that is "due to a traffic accident." A traffic accident is an acute event that could render a person suddenly and unexpectedly disabled. The agency's interpretation of Ohio Adm. Code 5101:1-39-07(D)(3) as being inapplicable to an individual whose condition has predictably deteriorated over time, is therefore consistent with the plain language of the rule.
 {¶ 40} Applying this interpretation of Ohio Adm. Code 101:1-39-07(D)(3) to Howell's situation, we find that Howell did not qualify for the exception. Prior to applying for Medicaid, Howell had several nursing home placements for broken hips, and required in-home care from her daughters for several years. Thus, the trial court was incorrect in concluding that Howell's "broken hip that caused her to enter the nursing home in July 2006 was a traumatic onset of disability as defined in Ohio Adm. Code 5101:1-39-07(D)(3)."
 {¶ 41} Moreover, as ODJFS points out, even absent the incorrect interpretation, Ohio Adm. Code 5101:1-39-07(D)(3) does not apply to Howell's case. The plain language of Ohio Adm. Code 5101:1-39-07(D)(3) requires that the transfer of resources occur before the traumatic onset of disability in order for the exception to apply. In this case, the trial court found that the transfer of resources occurred when Howell removed her name from the certificates of deposit in August, 2006. The court also found that the onset *Page 9 
of disability occurred when Howell broke her hip and entered the nursing home in July, 2006. Therefore, the transfer of resources in this case occurred after the alleged traumatic onset of disability, notbefore, thus rendering Ohio Adm. Code 5101:1-39-07(D)(3) inapplicable.
 {¶ 42} Accordingly, ODJFS's first assignment of error is meritorious. The trial court misinterpreted the meaning of Ohio Adm. Code 5101:1-39-07
and further misapplied it to Howell's case.
 Undue Hardship Exemption {¶ 43} In its second assignment of error, ODJFS argues:
 {¶ 44} "The Lower Court Erred In Concluding That Ms. Howell Met the Undue Hardship Requirements Found in OAC 5101:1-39-07(N)."
 {¶ 45} Here the trial court's determination was more factual in nature, because to qualify for an undue hardship exemption, Ohio Adm. Code 5101:1-39-07(N) states the applicant bears the "the burden of proving all elements and requirements by clear, convincing, and credible evidence, including that an undue hardship exists or will exist and that a good faith effort was made to recover or make the resources available." Accordingly, we will exercise abuse of discretion review of this assignment of error. Pons, 66 Ohio St.3d at 621.
 {¶ 46} Here, the trial court found that Howell met the requirements for an undue hardship exemption solely because Howell's nursing home had served her with an eviction notice.
 {¶ 47} Ohio Adm. Code 5101:1-39-07(N) does provide that an individual will not be subject to restricted medicaid coverage because of an improper transfer if it would cause undue hardship, and deprive the individual of inter alia, `* * * shelter, or other necessities of life'. Id., (emphasis added).
 {¶ 48} However, Ohio Adm. Code 5101:1-39-07(N)(3) also lists other requirements that an applicant must meet in order to qualify for an undue hardship exemption. Specifically:
 {¶ 49} "(a) To be considered for an undue hardship, the individual must request the *Page 10 
undue hardship in writing.
 {¶ 50} "(b) * * *
 {¶ 51} "(c) The individual must document, to the satisfaction of the administrative agency, a good faith attempt was made to recover or make the resource available.
 {¶ 52} "(d) The individual or facility making the request for an undue hardship exemption has the burden of proving all elements and requirements by clear, convincing, and credible evidence, including that an undue hardship exists or will exist and that a good faith effort was made to recover or make the resources available.
 {¶ 53} "(e) When the individual resides in a [long term care facility], the individual or facility making the request for an undue hardship must prove the individual is in jeopardy of losing the food or shelter due to a planned discharge resulting from the imposition of a restricted medicaid coverage period. The individual will not be found to be in jeopardy unless both of the following are established:
 {¶ 54} "(i) The individual or the individual's representative must first exhaust all legal remedies and appeals to challenge the planned discharge; and
 {¶ 55} "(ii) The facility must document that it has exhausted all legal remedies to collect, reconvey, or recover the improperly transferred assets, including but not limited to actions authorized under section 1336.01 of the Revised Code, or any other similar law of another jurisdiction. The facility is not required to pursue a legal action if it can document the cost of such an action would exceed the gross value of the assets subject to recovery in a legal action."
 {¶ 56} The trial court did not discuss these requirements when concluding that Howell qualified for an undue hardship exemption, and moreover, there is no evidence in the record to show that Howell met or even attempted to meet them. For example, there is no documentary evidence that a good faith effort was made to recover or make the transferred resources available. Further, there was no evidence presented to show that Howell had exhausted all legal remedies and appeals to challenge the planned discharge from the nursing home facility. As such, the trial court's conclusion that Howell qualified for an undue hardship exemption pursuant to Ohio Adm. Code 101:1-39-07(N) was an *Page 11 
unreasonable factual determination and therefore an abuse of discretion. Accordingly, ODJFS's second assignment of error is meritorious.
 Conclusion {¶ 57} Both of ODJFS's assignments of error are meritorious. First, the trial court misinterpreted the traumatic onset of disability exception found in Ohio Adm. Code 5101:1-39-07(D)(3). The example provided in this rule indicates it applies in cases where the onset of disability was sudden and unexpected, and not, as the trial court found, where the applicant's health had predictably deteriorated over time. As a result of this improper interpretation, the trial court misapplied the exception to Howell's case. Moreover, even absent the incorrect interpretation, the trial court erred in applying the exception to Howell's case, because the transfer of resources occurred after the
alleged traumatic onset of disability, not before, as required by Ohio Adm. Code 5101:1-39-07(D)(3).
 {¶ 58} In addition, the trial court abused its discretion by finding that Howell qualified for an undue hardship exemption pursuant to Ohio Adm. Code 5101:1-39-07(N). Section (3) of that provision lists specific requirements that an applicant must satisfy to qualify for the exemption. The trial court did not even discuss these requirements when concluding that Howell qualified for an undue hardship exemption. Moreover, there is no evidence in the record to show that Howell met those requirements. As such the trial court's conclusion that Howell qualified for an undue hardship exemption was unreasonable and therefore an abuse of discretion.
 {¶ 59} Accordingly, the judgment of the trial court is reversed and the Administrative Appeal Decision of the ODJFS dated July 27, 2007 is reinstated.
Vukovich, P.J., concurs.
Waite, J., concurs. *Page 1