[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 467.]

THE STATE EX REL. CROSSET COMPANY, INC., APPELLANT AND CROSS-APPELLEE, *v.* CONRAD, ADMINISTRATOR OF WORKERS' COMPENSATION, APPELLEE AND CROSS-APPELLANT.

[Cite as *State ex rel. Crosset Co., Inc. v. Conrad*, 2000-Ohio-464.]

*Workers' compensation—Corporation that purchases the foreclosed assets of another corporation through an intermediary bank may not be held liable for the outstanding workers' compensation claims costs incurred during the predecessor's participation in a retrospective-rating plan.*

(No. 96-2832—Submitted September 14, 1999—Decided January 19, 2000.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 95APD10-1300.

————————

{¶ 1} The Crosset Company, Inc. (hereinafter "Old Crosset") was engaged in the business of wholesale produce distribution in Cincinnati, Ohio. In 1959, Old Crosset filed an application to participate as a member in the State Insurance Fund and obtained workers' compensation coverage for its employees. From 1959 to 1990, Old Crosset paid workers' compensation premiums under the standard practice of calculating annual premiums according to a base rate as modified by the employer's claims experience. See Ohio Adm.Code 4123-17-03(A).

{¶ 2} In 1986, the General Assembly enacted R.C. 4123.29(B), now renumbered R.C. 4123.29(A)(3), which, in pertinent part, directed the Bureau of Workers' Compensation ("Bureau") to "[d]evelop and make available to employers who are paying premiums to the state insurance fund alternative premium plans. Alternative premium plans shall include retrospective-rating plans." 141 Ohio Laws, Part I, 741. Pursuant to R.C. 4123.29(A)(3), the Bureau promulgated rules for retrospective-rating plans. Ohio Adm.Code 4123-17-41 through 4123-17-54.

**{¶ 3}** As set forth in the administrative rules, a retrospective-rating plan is an optional premium plan whereby an employer submits an application to the Bureau seeking agency approval to participate in the plan. Ohio Adm.Code 4123-17-43(A). In order to participate in the plan the employer is required to meet certain "financial standards demonstrating strength and stability." Ohio Adm.Code 4123-17-42(C)(1). Under a retrospective-rating plan the employer assumes additional risk by agreeing to pay the actual medical costs and compensation of each claim arising during the "retrospective policy year," up to a maximum amount, and, in exchange, the employer pays a substantially lower premium for that policy year. Ohio Adm.Code 4123-17-41, 4123-17-44, 4123-17-52. Those claims filed during the policy year are monitored by the Bureau for a period of ten years, *i.e.,* the "evaluation period," in order to determine the employer's aggregate retrospectively rated premium. Ohio Adm.Code 4123-17-41(E), 4123-17-46. See, also, Fulton, Ohio Workers' Compensation Law (2 Ed.1998) 387, Section 14.8.

**{¶ 4}** In 1990, Old Crosset submitted an application to the Bureau to participate in a retrospective-rating plan. The Bureau, apparently determining that Old Crosset met the financial criteria set forth in the Administrative Code, approved its application for retrospective rating. The agreement took effect for a one-year period beginning in July 1990. Old Crosset also applied and was approved for participation in the plan for the policy year beginning in July 1991. The record before this court suggests that Old Crosset did not participate in the retrospective-rating plan beyond the July 1991 policy year.[1]

---

1. In their merit briefs before this court, both New Crosset and the Bureau allude to the notion that Old Crosset was not participating in a retrospective-rating plan when its assets were foreclosed in June 1993. In fact, both parties seem to agree that Old Crosset was involved in a "group rating" plan when its assets were foreclosed. However, there is nothing in the record before this court that would verify this contention. In any event, the omission is not relevant, as only Old Crosset's participation in the retrospective-rating plan for the periods beginning July 1990 and July 1991 is in contention.

{¶ 5} In 1993, Old Crosset was forced to cease operations of its wholesale produce business when Society National Bank ("Society") and Fifth Third Bank ("Fifth Third") foreclosed on the company's assets. On June 12, 1993, an "Asset Sale Agreement" was executed between TCC Acquisition, Inc. ("TCC"), Castellini Company, Society, and Fifth Third, whereby TCC agreed to purchase most of Old Crosset's assets from the banks. Old Crosset was not a party to this agreement. TCC continued in the business of wholesale produce distribution and also continued to use the Crosset trade name for the business.

{¶ 6} On July 2, 1993, TCC, under the name of Crosset Company ("New Crosset"), filed an application with the Bureau for workers' compensation coverage. On October 6, 1993, the Bureau conducted an audit of New Crosset's operations. The auditor for the Bureau found that Old Crosset "ended business [6-12-93] when they were foreclosed by their banks." The auditor further determined that Old Crosset had ceased doing business in all respects. The auditor's report concluded: "This is to be a transfer in whole. All of [Old Crosset's] assets & operations were sold to [New Crosset]."

{¶ 7} The Bureau then transferred Old Crosset's claims experience to New Crosset, effective as of July 2, 1993. In addition, the Bureau forwarded to New Crosset certain statements detailing the retrospective-rating obligations accumulated by Old Crosset. The Bureau also sent an invoice, which indicated that New Crosset was required to pay the unbilled claims costs for the 1990 and 1991 policy years when Old Crosset had been retrospectively rated. On January 18, 1994, New Crosset objected to the Bureau's conclusion that New Crosset was responsible for the retrospective-rating claims costs of Old Crosset.

{¶ 8} New Crosset's objection was forwarded to the Adjudicating Committee of the Bureau. In regard to New Crosset's purchase of the foreclosed assets, the Adjudicating Committee found that "a succession has occurred for workers' compensation purposes." As a result, the Adjudicating Committee held

that, pursuant to the Ohio Administrative Code,[2] New Crosset had "wholly succeed[ed]" Old Crosset, and therefore the Bureau was correct in its assessment that New Crosset was liable for Old Crosset's retrospective-rating claims costs.

{¶ 9} On June 6, 1995, New Crosset appealed the Adjudicating Committee's order to a subcommittee of the Workers' Compensation Board ("Board"). After a hearing, the Board affirmed the "decision, findings, and rationale set forth in the order of the Adjudicating Committee."

{¶ 10} On October 10, 1995, New Crosset filed a complaint in the Franklin County Court of Appeals requesting that a writ of mandamus issue vacating the order of the Bureau and compelling the Bureau to find that New Crosset is not responsible for the retrospective-rating claims costs incurred by Old Crosset. The court of appeals concluded that the Bureau had abused its discretion when it declared that New Crosset was liable for the *entire* amount of Old Crosset's outstanding retrospective-rating claims costs. The court of appeals instead found that New Crosset had only partially succeeded Old Crosset, and thus granted a limited writ of mandamus vacating the order of the Bureau and ordering the Bureau to reassess New Crosset's liability based on a partial succession.

{¶ 11} This cause in now before this court upon an appeal and cross-appeal as of right.

_____

*Dinsmore & Shohl, L.L.P., Michael L. Squillace* and *George B. Wilkinson,* for appellant and cross-appellee.

*Betty D. Montgomery,* Attorney General, and *William J. McDonald,* Assistant Attorney General, for appellee and cross-appellant.

_____

2. Ohio Adm.Code 4123-17-51(F) provides: "When an entity not having coverage wholly succeeds a retrospective-rated entity, the experience of the predecessor shall be transferred to the successor-employer effective as of the actual date of succession. The successor remains liable for any and all open retrospective-rated premium or other charges associated with the predecessor."

**DOUGLAS, J.**

{¶ 12} At the time that New Crosset purchased the foreclosed assets of Old Crosset, R.C. 4123.32 provided:

"The administrator of workers' compensation shall * * * adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund among which rules shall be the following:

" * * *

"(D) Such special rules as the administrator considers necessary to safeguard the fund and as are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and the commission may require that if any *employer transfers his business in whole or in part or otherwise reorganizes the business*, *the successor in interest shall assume, in proportion to the extent of the transfer, * * * the employer's account and shall continue the payment of all contributions due under this chapter*[.]"  (Emphasis added.)  143 Ohio Laws, Part II, 3317-3318.

{¶ 13} The issue presented for our review is whether a corporation that purchases the foreclosed assets of another corporation through an intermediary bank may be held liable for the outstanding workers' compensation claims costs incurred during the predecessor's participation in a retrospective-rating plan.  The court of appeals found R.C. 4123.32(D)[3] applicable to this matter, and neither New Crosset nor the Bureau argues with that conclusion.  However, given the unique factual circumstances surrounding Old Crosset's "transfer of business," we find that R.C. 4123.32(D), and more precisely the language emphasized above, is

---

3. The court of appeals incorrectly referred to this section as former section (E) of the statute.  The correct cited version is R.C. 4123.32(D), as effective in 1993, the year of New Crosset's purchase and its transfer application.  143 Ohio Laws, Part II, 3197, 3317-3318.

inapplicable. Therefore, under the specific facts of this case, we hold that New Crosset is not liable for the retrospective-rating claims costs of Old Crosset.

I

{¶ 14} We begin with the premise that " '[w]here the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for * * * [resort] to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted.' " *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213, 404 N.E.2d 159, 161, quoting *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus. Statutory interpretation is necessary only in those instances when a statute is found to be subject to various interpretations. *Id.,* 62 Ohio St.2d at 190, 16 O.O.3d at 214, 404 N.E.2d at 162. We conclude that the specific language of R.C. 4123.32(D) under consideration herein, *i.e.,* "employer transfers his business in whole or in part or otherwise reorganizes the business," is plain and unambiguous. The language of the statute clearly refers to a voluntary act of the employer and not the involuntary transfer of the employer's business through an intermediary bank.

{¶ 15} In this matter, there was no transfer of the business by the employer. Old Crosset did not have any assets to transfer, as its assets had been seized by Society and Fifth Third. The transaction between New Crosset and the banks did not occur until after Old Crosset had ceased operation of its entire wholesale produce business. Thus, Old Crosset was not, nor could it have been, the transferor of its own assets.

{¶ 16} Additionally, New Crosset purchased the assets through an "Asset Sale Agreement." The signatories to that agreement were TCC (New Crosset), Castellini Company, Society, and Fifth Third. Old Crosset was not a party to the agreement. Here, the transferors of the assets are banks that have neither experience ratings nor workers' compensation coverage to which New Crosset could succeed. The transfer of the assets was not achieved through a corporate transaction

conducted between Old Crosset and New Crosset, but, instead, was accomplished by a sale between New Crosset and the banks.

{¶ 17} While it is true that R.C. 1309.47(D)[4] contemplates the discharge of security interests and other liens where, after default, collateral is disposed of by a secured party (here the banks), nevertheless the intent seems to be that a purchaser for value "takes free of all * * * rights and interests." A contrary holding by this court would subject all purchasers of assets from secured parties, where the purchasers intended to continue in the same business, to liabilities of debtors, even though such purchasers might not have any way of determining what, if any, such liabilities might exist. Chances are that before, during, and after forfeiture of assets of a debtor to a secured creditor, even the secured creditor may not know or have any way to find out about any outstanding obligations junior to the secured creditor's interest.

II

{¶ 18} In reaching their decisions, both the court of appeals and the Bureau relied on this court's decision in *State ex rel. Lake Erie Constr. Co. v. Indus. Comm.* (1991), 62 Ohio St.3d 81, 578 N.E.2d 458. As a result, significant portions of both parties' arguments center on the applicability of *Lake Erie* and its interpretation of the R.C. 4123.32(D) phrase "successor in interest."

{¶ 19} In *Lake Erie,* Lake Erie Construction Company ("Lake Erie") challenged a decision by the Bureau of Workers' Compensation to combine the experience rating of its predecessor, the Paul E. Bleile Company, with that of its own. The court upheld the decision of the Bureau and, in so doing, rejected Lake Erie's assertion that the common-law definition of "successor in interest" applied.

---

4. R.C. 1309.47 provides: "(D) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of sections 1309.44 to 1309.50 of the Revised Code or of any judicial proceedings[.]"

*Id.* at 83, 578 N.E.2d at 460. In resolving the issue in *Lake Erie*, the court construed the term "successor in interest," as contemplated by R.C. 4123.32(D) and former Ohio Adm.Code 4127-7-02(B),[5] for purposes of workers' compensation, as meaning a "transferee of a business in whole or in part." *Id.* at 84, 578 N.E.2d at 460.

**{¶ 20}** New Crosset urges that *Lake Erie* is inapplicable to the instant matter, since the issue under consideration therein involved risk *experience* ratings and not a retrospective-rating premium plan, two concepts that New Crosset contends are irreconcilable. In contrast, the Bureau argues that the court's decision in *Lake Erie* did not hinge on the type of rating involved and urges that we apply the definition of "successor in interest" set forth therein. The Bureau contends that New Crosset fits the definition of "successor in interest" espoused in *Lake Erie* because New Crosset is merely a transferee of Old Crosset's business.

**{¶ 21}** *Lake Erie* involved experience rating, a concept used to determine whether a particular employer should be assigned premium rates higher than or less than the "basic rate" that is assigned to employers within the same classification. In experience rating, the employer's past claims history, or experience, is consulted to compute a rate that produces premiums sufficient to pay future claims. Ohio Adm.Code 4123-17-03. An employer who establishes a "good" claims history is able to reduce its premium rate below the basic rate for employers in the same

---

5. Former Ohio Adm.Code 4121-7-02(B) provided:

"(B)(3) Where a legal entity having established coverage or having had experience in the most recent experience period wholly succeeds one or more legal entities having established coverage or having had experience in the most recent experience period and at least one of the entities involved has a merit rating experience, the experience of all the involved entities shall be combined to establish the rate of the successor.

"(4) Where a legal entity succeeds in the operation of a portion of a business of one or more legal entities having an established coverage or having had experience in the most recent experience period, the successor's rate shall be based on the predecessor's experience within the most recent experience period, pertaining to the portion of the business acquired by the successor." See 1979-1980 OMR 4-359, effective November 26, 1979.

classification, whereas an employer with a bad loss experience is penalized and must pay a rate in excess of the basic rate. Fulton, *supra*, at 386-387, Section 14.7.

{¶ 22} In contrast, a retrospective-rating plan is an alternative premium plan that is designed to give employers a financial advantage by lowering their annual workers' compensation premium. Rather than pay substantial premiums each year (and consequently no claims costs), under a retrospective-rating plan the employer is permitted by the Bureau to pay a lower premium for one year. In exchange, the employer agrees to pay the actual medical costs and compensation of each claim arising during that year. The Bureau monitors these claims for ten years, known as the "evaluation period," and the employer is then able to spread out its medical costs and compensation payments over this period. R.C. 4123.29(A)(3), Ohio Adm.Code 4123-17-41, 4123-17-44, 4123-17-46, 4123-17-52. See, also, Fulton, *supra*, at 387-388, Section 14.8.

{¶ 23} Additionally, it is clear that the obligations assumed by an employer operating under a retrospective-rating plan are markedly different from those of an experience-rated employer. As R.C. 4123.29(A)(3) indicates, a retrospective-rating plan is an *alternative* premium payment plan. There is no obligation, statutory or otherwise, that would mandate an employer to participate in such a plan. A qualifying employer has complete discretion, subject of course to the Bureau's approval, whether to participate in a retrospective-rating plan. Ohio Adm.Code 4123-17-43(A) and 4123-17-42(C)(1).

{¶ 24} Essentially, a retrospective-rating plan is a method of financing the payment of premiums that is contractual in nature. The employer and the Bureau agree on a reduced premium according to such factors as the amount of risk the employer is willing to accept and the maximum amount the employer is willing to pay. Again, these terms are subject to the ultimate approval of the Bureau. Thus, the amount of an employer's premium payment under a retrospective-rating plan is based on the terms of the agreement reached between the employer and the Bureau.

Ohio Adm.Code 4123-17-42 through 4123-17-47. See, also, Fulton, *supra*, at 387, Section 14.8. There is clearly a distinct and fundamental difference between the transfer of ratings based upon a predecessor's claims experience and holding a successor company liable for claims due that the predecessor itself promised to pay under a retrospective-rating plan.

{¶ 25} Furthermore, R.C. 4123.32(D) confers two distinct types of rulemaking power on the Bureau. The first type is to adopt rules establishing which workers' compensation premium *rates* apply when "one employer takes over the occupation or industry of another." The second type is to adopt rules establishing who should assume *payments* due on an employer's account after he "transfers his business in whole or in part, or otherwise reorganizes the business." *Lake Erie* concerned the Bureau's power to regulate rates, and not the power to regulate payments, the issue in the instant matter. In defining the term "successor in interest," *Lake Erie* may have confused the two rulemaking powers set forth in R.C. 4123.32(D). In any event, we continue to adhere to our position that the definition of "successor in interest" in *Lake Erie* is properly applied for purposes of transferring or combining the experience ratings of employers. As the Bureau's Law Director astutely points out, the rule in *Lake Erie* "is designed to place workers' compensation [rate] *experience* with the proper employer * * * embrac[ing] the general philosophy that the best predictor of future performance is *past experience*." (Emphasis added.) However, this case has nothing to do with experience ratings, and the rationale espoused above is irrelevant in a retrospective-rating plan.

{¶ 26} Moreover, R.C. 4123.32(D) requires that those rules adopted by the Administrator, in addition to being necessary to safeguard the fund, must also be "just in the circumstances." In this matter there was no transfer between Old Crosset and New Crosset, no agreement or negotiations between the two, and no opportunity for New Crosset, through the intermediary banks, to determine the

claims obligations of Old Crosset. To label New Crosset a "successor in interest," as defined in *Lake Erie*, and thus hold New Crosset liable for Old Crosset's prior obligations, would, in our determination, be unjust. Given the facts of this particular case, we are unwilling to hold New Crosset liable. Therefore, based on the foregoing, we conclude that New Crosset is not a "successor in interest," as that term was contemplated by *Lake Erie* and R.C. 4123.32(D), and we find that the court of appeals and the Bureau erred when they determined otherwise.

### III

**{¶ 27}** Having deemed that R.C. 4123.32(D) is inapplicable and that New Crosset is not a "successor in interest," we turn to common-law principles of successor liability to determine what obligations, if any, New Crosset may have acquired regarding Old Crosset's retrospective-rating agreement. In *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129, syllabus, the court held that "[a] corporation that purchases the assets of another is not liable for the contractual liabilities of its predecessor corporation unless (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability. (*Flaugher v. Cone Automatic Machine Co.* [1987], 30 Ohio St.3d 60, 30 OBR 165, 507 N.E.2d 331, followed.)" We find that the general rule of *Welco*, *i.e.,* that a purchaser of a corporation's assets, barring any of the exceptions, is not liable for the debts and obligations of a predecessor corporation, is applicable to the case at bar. In addition to all the foregoing and because we find that New Crosset does not fit into any of the four exceptions to the general rule, we hold that New Crosset is not liable for the retrospective-rating claims costs of Old Crosset.

**{¶ 28}** Accordingly, for the reasons set forth above, the judgment of the court of appeals is reversed, and the writ of mandamus is granted in full.

*Judgment reversed
and writ granted.*

RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

———————————

**COOK, J., dissenting.**

{¶ 29} I respectfully dissent from the majority's decision to grant the requested writ to New Crosset in this case. In holding that R.C. 4123.32(D) does not apply to this matter, and that New Crosset is not liable for the retrospective-rating claims costs of its predecessor, the majority uses "the specific facts of this case" to justify a deviation from the statutes and rules of Ohio's workers' compensation scheme, as well as from this court's own precedent.

I

{¶ 30} As the majority notes, R.C. 4123.32(D) permits the administrator to subject "successors in interest" to the account of and contributions due from an employer who "transfers his business in whole or in part or otherwise reorganizes the business." R.C. 4123.32(D). For R.C. 4123.32(D) to apply, then, two conditions must be satisfied. First, a "transfer" or "reorganization" of the predecessor employer's business must have occurred. Second, the new employer must fit the definition of a "successor in interest." The majority holds that neither of these conditions was satisfied in this case, but I think that both conditions were satisfied.

*A. Old Crosset "Transferred" or "Otherwise Reorganized" its Business*

{¶ 31} First we consider whether Old Crosset "transfer[red] [its] business in whole or in part or otherwise reorganiz[ed] the business." R.C. 4123.32(D). Focusing only on the first half of this phrase, the majority concludes that because Old Crosset did not *voluntarily* transfer its business, New Crosset was not subject to the administrator's authority establishing liability for Old Crosset's

retrospective-rating claims costs. The majority also implies that the presence of an intermediary bank, and the lack of direct negotiations between Old and New Crosset, mean that no "transfer" occurred to trigger the rulemaking authority of the administrator under R.C. 4123.32(D).

**{¶ 32}** But contrary to the majority's thesis, a "transfer" encompasses "*every* method—*direct or indirect,* absolute or conditional, *voluntary or involuntary*—of disposing of or parting with property or with an interest in property, including retention of title as a security interest *and foreclosure of the debtor's equity of redemption*." (Emphasis added.) Black's Law Dictionary (7 Ed.1999) 1503. As a verb, "transfer" means "to convey or make over (title, right, or property) by deed *or legal process*." (Emphasis added.) XVIII Oxford English Dictionary (2 Ed.1989) 396. Our own commercial code defines "transfer" for purposes of the Uniform Fraudulent Transfer Act as "every *direct or indirect*, absolute or conditional, and *voluntary or involuntary* method of disposing of or parting with an asset." (Emphasis added.) R.C. 1336.01(L).

**{¶ 33}** Moreover, the majority focuses its analysis on only half of the statutory phrase that supports the authority of the administrator. As quoted above, R.C. 4123.32(D) permits the administrator to adopt special rules and subject an employer to a predecessor's account and contributions when "any employer transfers his business in whole or in part *or otherwise reorganizes the business*." (Emphasis added.) R.C. 4123.32(D). The second half of the phrase—quoted, but never applied, by the majority—contains even broader triggering language than the "transfer" phrase that precedes it, and contemplates many other situations (in *addition* to an employer's transfer of the business) where the administrator is authorized to assess the liability of a successor in interest.

**{¶ 34}** In fact, the word "reorganization" is a commonly used term for the restructuring of a business that occurs in bankruptcy. Employers forced into such proceedings would likely hesitate to describe such actions as voluntary. The

majority, however, holds that without a voluntary transfer, R.C. 4123.32(D) is inapplicable. I believe that this position unduly narrows the language of R.C. 4123.32(D), and erroneously restricts the administrator from engaging in his delegated rulemaking function.

### B. New Crosset Qualifies as a Successor in Interest

{¶ 35} The second requirement under R.C. 4123.32(D)—to trigger the administrator's authority to require a successor employer to assume the predecessor employer's account and contributions—focuses not on the actions of the old employer, but rather on the status of the new employer. In order to authorize the administrator, the new employer must qualify as a successor in interest. R.C. 4123.32(D). We have held that "a successor in interest, for workers' compensation purposes, is simply a transferee of a business *in whole or in part*." (Emphasis added.) *State ex rel. Lake Erie Constr. Co. v. Indus. Comm.* (1991), 62 Ohio St.3d 81, 83-84, 578 N.E.2d 458, 460. In *Lake Erie,* we concluded that the successor employer qualified as a successor in interest under R.C. 4123.32(D) (and an associated rule) because an existing entity, the successor employer, bought the predecessor employer's tools and equipment, agreed to employ the predecessor's employees, and assumed the predecessor's leases—even though the successor continued operations under a distinct name. *Id.*, 62 Ohio St.3d at 81-82, 578 N.E.2d at 459. Here, New Crosset purchased virtually all of Old Crosset's assets, including real property, equipment, fixtures, certain contract rights, lease agreements, purchase orders, records, inventory, and accounts receivable. New Crosset even assumed $5 million worth of accounts payable, and operated under Old Crosset's trade name. New Crosset satisfies *Lake Erie*'s test to qualify as a successor in interest under R.C. 4123.32(D).

{¶ 36} In *Lake Erie*, this court expressly declined to adopt a narrower common-law definition of "successor in interest" of the type suggested by the majority here, and expressly rejected a proposed analogy to the definition of a

"successor corporation" under the law of products liability. *Id*., 62 Ohio St.3d at 83-84, 578 N.E.2d at 460-461. The *Lake Erie* court determined that there was no need to look beyond the workers' compensation provisions to the common law to define "successor in interest" for purposes of the workers' compensation statutes. *Id.*, 62 Ohio St.3d at 84, 578 N.E.2d at 460. We recently reaffirmed this portion of *Lake Erie* in *State ex rel. H.C.F. v. Ohio Bur. of Workers' Comp.* (1998), 80 Ohio St.3d 642, 648, 687 N.E.2d 763, 767.

{¶ 37} The majority's decision here, therefore, constitutes a significant deviation—rather than a distinction—from our holding in *Lake Erie*. The majority limits our decision in *Lake Erie* by straining to distinguish the *Lake Erie* holding based on the difference between successor liability for risk-experience rating and successor liability for retrospective-rating premiums. R.C. 4123.32(D), however, endorses no such distinction. Rather, the statute empowers the administrator to determine successor liability both for "rates to be applied" and for "all contributions due." R.C. 4123.32(D).

{¶ 38} The majority takes a blue pencil to the language of the statute and inserts a new requirement that a transfer of the business by the employer be "voluntary" and "direct" in order to trigger the administrator's rulemaking authority embracing the liability of the successor employer. Under the majority's view, as long as a foreclosing bank comes between a predecessor employer and a successor employer, the administrator has no authority to ensure that the successor assumes the retrospective-rating claims costs of the predecessor's account. This result restricts the calculated authority delegated to the administrator under R.C. 4123.32(D) and the workers' compensation actuarial scheme.

II

{¶ 39} The majority supports its decision by declaring that "[t]o label New Crosset a 'successor in interest,' as defined in *Lake Erie*, and thus hold New Crosset liable for Old Crosset's prior obligations, would, in our determination, be unjust."

It is true, as the majority notes, that R.C. 4123.32(D) delegates authority to the administrator to adopt "[s]uch special rules as the administrator considers necessary and that are *just* in the circumstances." (Emphasis added.) R.C. 4123.32(D). The majority, however, appears to make an *ad hoc* assessment of justice in the application of the rules without according the deference due "an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command." *State ex rel. McLean v. Indus. Comm.* (1986), 25 Ohio St.3d 90, 92, 25 OBR 141, 143, 495 N.E.2d 370, 372, citing *Jones Metal Products Co. v. Walker* (1972), 29 Ohio St.2d 173, 181, 58 O.O.2d 393, 398, 281 N.E.2d 1, 8.

 MOYER, C.J., concurs in the foregoing dissenting opinion.

     ———————————