DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Peoplelink, LLC ("Peoplelink"), requests that this court find that the Ohio Bureau of Workers' Compensation ("BWC") abused its discretion when it authorized the partial transfer of the risk experience of Corporate Staffing Resources, Inc. ("CSR, Inc.")[1] to CSR Acquisition, LLC ("CSR Acquisition"), which was later merged into Peoplelink. Relator seeks a writ of mandamus that requires the BWC to issue an order that: (1) eliminates the partial transfer of risk experience from CSR, Inc. to CSR Acquisition; (2) credits CSR Acquisition for its costs associated with CSR, Inc.'s workers' compensation claims; and (3) reduces the claims experience of CSR Acquisition by the amount of purportedly improperly transferred claims.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded that the BWC did not abuse its discretion and she recommended denial of relator's request for a writ of mandamus.
 {¶ 3} From the magistrate's decision, relator objects. In its objections, relator asserts the following:
1) [T]he Magistrate erred in concluding that neither the Bankruptcy Court Order nor the Asset Purchase Agreement addressed whether Peoplelink would be liable for assuming any of the risk experience of CSR, Inc.;
2) [T]he Magistrate erred in concluding that the holding in [State ex rel. Crosset Co., Inc. v. Conrad (2000),87 Ohio St.3d 467] does not apply to Peoplelink's acquisition of some of CSR, Inc.'s assets;
3) [T]he Magistrate erred in concluding that Peoplelink was a successor in interest of CSR, Inc.; and
4) [T]he Magistrate erred in concluding that BWC did not abuse its discretion in determining that Peoplelink should assume part of CSR, Inc.'s claim experience rating.
(Objections, at 3.)
 {¶ 4} Relator's first objection asserts that the magistrate construed language too narrowly in both the asset purchase agreement and the bankruptcy court order when she found that neither of these documents addressed Peoplelink's liability for assuming CSR, Inc.'s risk experience.
 {¶ 5} Based upon our review of the asset purchase agreement and the bankruptcy court order, we agree with the magistrate's conclusion that neither of these documents addressed whether relator would be liable for assuming any of the risk experience of CSR, Inc. Furthermore, because the BWC's experience rating relates to CSR, Inc.'s pre-bankruptcy experience of safety practices, see, generally, Fulton, Ohio Workers' Compensation Law (2 Ed. 1998) 386-387, Section 14.7; Wasil, Mastrangelo, DeRose, Ohio Workers' Compensation Law (2003), Section 3:49, we do not regard the experience rating to be an interest, claim, or encumbrance as contemplated by the asset purchase agreement or the bankruptcy court's order.
 {¶ 6} Therefore, relator's first objection is not persuasive.
 {¶ 7} Relator's second objection asserts the magistrate erred when she concluded that State ex rel. Crosset Co., Inc. v.Conrad (2000), 87 Ohio St.3d 467, did not apply to the facts of this case.
 {¶ 8} In Crosset, the court considered "whether a corporation that purchases the foreclosed assets of another corporation through an intermediary bank may be held liable for the outstanding workers' compensation claims costs incurred during the predecessor's participation in a retrospective-rating plan." Id. at 471.
 {¶ 9} Here, however, liability for outstanding workers' compensation costs incurred during a predecessor's participation in a retrospective-rating plan is not at issue. Rather, the issue here concerns whether the BWC abused its discretion by authorizing the partial transfer of the risk experience of CSR, Inc. to CSR Acquisition. In Crosset, the court observed that "[t]here is clearly a distinct and fundamental difference between the transfer of ratings based upon a predecessor's claims experience and holding a successor company liable for claims due that the predecessor itself promised to pay under a retrospective-rating plan." Id. at 474.
 {¶ 10} Consequently, as Crosset concerned a different issue than the one at issue here, we conclude the magistrate properly distinguished Crosset.
 {¶ 11} Relator's contention that Crosset's holding should be applied to experience-rated employers and relator's conjecture that in the future the Supreme Court of Ohio will apply the reasoning of Crosset to such parties are not convincing. As an intermediate appellate court, this court should be cautious in determining what the public policy of this state should be.James A. Keller, Inc. v. Flaherty (1991), 74 Ohio App.3d 788,792. Only when an issue is squarely before this court should we address it. Id.; see, also, id. (observing that in this state the Supreme Court of Ohio is the primary judicial policymaker).
 {¶ 12} Accordingly, relator's second objection is not persuasive.
 {¶ 13} Relator's third objection asserts the magistrate erred when she concluded that Peoplelink was a successor in interest of CSR, Inc.
 {¶ 14} For workers' compensation purposes, a "successor in interest" "is simply a transferee of a business in whole or in part." State ex rel. Lake Erie Constr. Co. v. Indus. Comm.
(1991), 62 Ohio St.3d 81, 84; see Crosset, at 474 (stating that "we continue to adhere to our position that the definition of `successor in interest' in Lake Erie is properly applied for purposes of transferring or combining the experience ratings of employers"). See, also, State ex rel. Lynnhaven XIV, LLC v.Conrad, Franklin App. No. 02AP-36, 2003-Ohio-825.
 {¶ 15} According to testimony before the BWC Adjudicatory Committee by William Wilkinson, CSR Acquisition acquired, among other things, all Ohio receivables, and a business location in Van Wert, Ohio, including the employees from the Van Wert location. (Stip. Ex. H, at 11, 15-16, 28.) See, also, Stip. Ex. A (Bureau of Workers' Compensation Questionnaire) (wherein William Wilkinson on behalf of CSR Acquisition stated that the operating location of the purchased business had not changed, all of CSR, Inc.'s Ohio employees had been re-employed by CSR Acquisition d/b/a Peoplelink, and there had been no significant changes in the Ohio operations or finished product due to a change in ownership).
 {¶ 16} Therefore, notwithstanding relator's contention to the contrary, we must conclude that, under the facts of the stipulated record, the magistrate did not err when she concluded that CSR Acquistion was a "successor in interest" for workers' compensation purposes.
 {¶ 17} Accordingly, relator's third objection is not persuasive.
 {¶ 18} Relator's fourth objection asserts the magistrate erred when she concluded that the BWC did not abuse its discretion when it determined that Peoplelink should assume part of CSR, Inc.'s claims experience rating. Here, the magistrate properly found that Peoplelink was a successor in interest to CSR, Inc. Moreover, pursuant to R.C. 4123.32(D) and Ohio Adm. Code4123-17-02, the BWC is empowered to determine the experience rating of a successor in interest for workers' compensation purposes. Accordingly, we cannot conclude that the magistrate erred when she found that there was no abuse of discretion by the BWC.
 {¶ 19} Accordingly, relator's fourth objection is not persuasive.
 {¶ 20} For the foregoing reasons, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Accordingly, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. Accordingly, we deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Brown and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Peoplelink, LLC: (f.k.a. CSR Acquisition, LLC), : Relator, : v. : No. 03AP-839 James Conrad, Administrator, Ohio : (REGULAR CALENDAR) Bureau of Workers' Compensation, : Respondent. :
 MAGISTRATE'S DECISION Rendered on February 6, 2004 Taft, Stettinius Hollister LLP, Samuel M. Duran and C.Bradley Howenstein, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent.
 IN MANDAMUS {¶ 21} Relator, Peoplelink, LLC, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to vacate its order partially transferring Corporate Staffing Resources, Inc.'s ("CSR, Inc.") workers' compensation claims experience to relator, which purchased a portion of CSR, Inc.'s assets through a sale in bankruptcy court.
 {¶ 22} Findings of Fact:
 {¶ 23} 1. CSR, Inc., operated a temporary staffing business which included three subsidiaries: Corporate Staffing Resources, LLC, Hamilton-Riker, LLC, and Mega-Force, LLC.
 {¶ 24} 2. On October 25, 2001, CSR, Inc., and its subsidiaries filed Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Indiana.
 {¶ 25} 3. On October 26, 2001, CSR, Inc., presented a proposed auction process to sell its operating assets. Ultimately, the proposal was accepted by the bankruptcy court. Pursuant thereto, CSR Acquisition, an entity that was created solely for purposes of this particular bid, acquired Corporate Staffing Resources, LLC. The other two subsidiaries, Hamilton-Riker, LLC, and Mega-Force, LLC, were not part of the sales agreement. As of December 2001, CSR Acquisition merged into Peoplelink, a temporary staffing business which was already doing business in several states, including Ohio. Pursuant to the sale, CSR Acquisition acquired all of the assets, accounts receivable, some computers and software and all of the employees (two) located at the VanWorth, Ohio office.
 {¶ 26} 4. Pursuant to the purchase agreement accepted by the order of the bankruptcy court, Article 1, 1.4 provided for liabilities excluded from purchase and identified the following:
* * * (b) any claims for workers compensation liability for incidents that occurred prior to the Closing Date[.] * * *
 {¶ 27} Pursuant to Article 4, 4.5, the seller was obligated to pay and satisfy, or make arrangements to pay and satisfy, as follows:
* * * (ii) all office operating expenses and overhead (including direct staff payroll and associated taxes) and worker's [sic] compensation coverage obligations and expenses for the period from October 25, 2001 through the Closing.
 {¶ 28} 5. Exhibit A listed the assets acquired by CSR Acquisition including, in part, the following:
* * * All present and future accounts, accounts receivable, customer contracts, contract rights, rights to payment, instruments, documents, chattel paper, security agreements, guaranties, undertakings, surety bonds, notes and drafts, and all forms of obligations owing to Grantor or in which Grantor may have any interest, however created or arising and whether or not earned by performance;
* * * All goodwill, trade secrets, computer programs, software, customer lists, trademarks and trade names (including without limitation "Corporate Staffing Resources"), patents, licenses, copyrights, technology, processes, proprietary information of which Grantor is a beneficiary[;]
* * * Those real estate leasehold interests with respect to those locations identified on the attached Exhibit "A.1;"
* * *
* * * Those executory contracts listed on the attached "Exhibit A.3";
* * *
* * * All present and future goods, including, without limitation, all consumer goods, inventory, computer, tangible personal property and office and other equipment, machinery, tools, furniture, furnishings, fixtures, trade fixtures, motor vehicles, and all other goods used in connection with or in the conduct of Grantor's business[.]
(Emphasis sic.)
 {¶ 29} 6. Thereafter, the BWC sent a questionnaire to CSR, Inc., indicating that the BWC had received information indicating that the business had been sold, and that, pursuant to Ohio Revised Code and BWC rules, the successor may be partially or wholly responsible for the predecessor's rating experience. The following questions and response thereto are relevant:
Has the operating location of the purchased business changed?
() Yes (X) No.
How many of the predecessor's employees have been reemployed by the new owner? (Explain as needed).
All in Ohio[.]
Identify any significant changes in the operation or finished product produced as a result of the change in ownership.
None in Ohio[.]
 {¶ 30} 7. BWC representative Bill Fugate recommended that relator inherit the risk experience of CSR, Inc.
 {¶ 31} 8. On May 29, 2002, relator requested a formal hearing before the BWC's adjudicating committee.
 {¶ 32} 9. A hearing was held on July 18, 2002, and resulted in an order wherein the BWC adjudicating committee made the following findings of fact:
* * * The employer, CSR Acquisition LLC, was a temporary company formed for the purpose of making a bid on a bankrupt company, CSR, Inc. CSR Acquisition purchased through the bankruptcy court the receivables and the clients, as well as the Ohio employees and the operating assets. CSR Acquisition was then merged into the already existing company, PeopleLink. The Bureau found that CSR acquisition was a successor to CSR Inc. The employer disagrees with this decision and requested a hearing on the matter.
Ultimately, the adjudicating committee concluded as follows:
After weighing the evidence, testimony, and case law presented at hearing, it is the DECISION of the Adjudicating Committee to deny the employer's request and affirm Risk Technical Services. Although the Bankruptcy Order addresses workers' compensation liabilities, the courts have held that payment of premiums based on an employer's experience is not a liability. In addition, the Committee does not rely on [State ex rel. Crosset Co., Inv. v.Conrad (2000), 87 Ohio St.3d 467] as the case differentiates between retrospective rating and experience rating, and therefore, is not on point.
 {¶ 33} 10. Relator appealed this decision and, on December 4, 2002, the appeal was heard by the BWC administrator's designee, who affirmed the decision of the adjudicating committee.
 {¶ 34} 11. Thereafter, relator filed the instant mandamus action in this court.
 {¶ 35} Conclusions of Law:
 {¶ 36} The question presented for review is whether the BWC's adjudicating committee abused its discretion by finding that relator was a successor in interest and ordering a partial transfer of CSR, Inc.'s workers' compensation claims experience to relator. For the reasons that follow, this magistrate finds that the BWC did not abuse its discretion.
 {¶ 37} Relator contends that the BWC's order constitutes an abuse of discretion in three ways: (1) it runs contrary to the Ohio Supreme Court's decision in State ex rel. Crosset Co., Inc.v. Conrad (2000), 87 Ohio St.3d 467; (2) it disregards the express and direct order of the Federal Bankruptcy Court; and (3) it frustrates the parties' contractual contentions as set forth in the asset purchase agreement.
 {¶ 38} First, after reviewing the asset purchase agreement and the order of the Federal Bankruptcy Court, this magistrate specifically finds that neither document addressed whether relator would be a successor in interest, under the laws of Ohio with regard to the workers' compensation system, and neither document addressed whether relator would be liable for assuming any of the risk experience of CSR, Inc. While Article 1 of the purchase agreement does provide that any claims for workers' compensation liability for incidents that occurred prior to the closing date are specifically excluded, the order of the BWC being challenged does not represent a claim.
 {¶ 39} R.C. 4123.32 provides, in pertinent part, as follows:
The administrator of workers' compensation, with the advice and consent of the workers' compensation oversight commission, shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund including all of the following:
* * *
(D) Such special rules as the administrator considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter[.]
 {¶ 40} The term "successor in interest" set forth in R.C.4123.32(D) has been construed by the Ohio Supreme Court, for workers' compensation purposes, as "simply a transferee of a business in whole or in part." State ex rel. Lake Erie Constr.Co. v. Indus. Comm. (1991), 62 Ohio St.3d 81, 84. As the court noted, the General Assembly could have expressly set forth a more specialized meaning if that was its intent.
 {¶ 41} In the present case, the evidence shows that relator is a transferee of part of the business of former CSR, Inc. Again, while the purchase agreement and the bankruptcy order make it clear that relator would not assume any of the workers' compensation claims, this case is not about the payment of a claim. Instead, relator will have to pay workers' compensation premiums for its Ohio employees anyway and the BWC determined that it was proper to base the payment of those premiums, in part, on the experience rating of CSR, Inc. Under R.C.4123.32(D), the BWC considered this determination to be "just in the circumstances."
 {¶ 42} Relator bases the main thrust of its argument on the court's decision in Crosset. However, this magistrate finds that the holding in Crosset does not apply to the situation presented herein in the manner in which relator asserts. The court set out the issue to be determined in Crosset, at 471, as follows:
The issue presented for our review is whether a corporation that purchases the foreclosed assets of another corporation through an intermediary bank may be held liable for the outstanding workers' compensation claims costs incurred during the predecessor's participation in a retrospectiverating plan. * * *
 {¶ 43} Clearly, the issue presented before the Crosset
court is not the same as the issue presented here.
 {¶ 44} In Crosset, the predecessor company was in bankruptcy due to foreclosure. Foreclosure is commonly understood to be involuntary. In the present case, while CSR, Inc. was in bankruptcy, CSR, Inc. had petitioned the bankruptcy court under Chapter 11. As such, although it can be assumed that CSR, Inc. did not want to declare bankruptcy, it nonetheless voluntarily proceeded to submit to the authority and protection of the bankruptcy court. Furthermore, CSR, Inc. proposed the auction. Although the sale had to be approved by the Bankruptcy Court, CSR, Inc., had a measure of control over its circumstances which the company in Crosset did not.
 {¶ 45} Secondly, in Crosset, the issue was whether the corporation that purchased the foreclosed assets of the predecessor would be liable for the outstanding workers' compensation claims costs incurred during the predecessor's participation in a retrospective-rating plan. In Crosset, the predecessor had taken advantage of R.C. 4123.29(A)(3) which provided an alternative method of paying premiums. Under the retrospective-rating plan, the predecessor had assumed additional risk by agreeing to pay the actual medical costs and compensation of each claim arising during the retrospective policy year, up to a maximum amount, and, in exchange, the predecessor paid a substantially lower premium for that policy year. The obligations that a purchaser would incur in Crosset are distinctively different than the present case. In fact, the court in Crosset
described the difference between the transfer of ratings based upon a predecessor's claims experience and the concept of holding a successor liable for claims due that the predecessor itself promised to pay under a retrospective-rating plan as follows:
Essentially, a retrospective-rating plan is a method of financing the payment of premiums that is contractual in nature. The employer and the Bureau agree on a reduced premium according to such factors as the amount of risk the employer is willing to accept and the maximum amount the employer is willing to pay. Again, these terms are subject to the ultimate approval of the Bureau. Thus, the amount of an employer's premium payment under a retrospective-rating plan is based on the terms of the agreement reached between the employer and the Bureau. Ohio Adm. Code4123-17-42 through 4123-17-47. See, also, Fulton, [Ohio Workers' Compensation Law (2 Ed. 1998)] at 387, Section 14.8. There is clearly a distinct and fundamental difference between the transfer of ratings based upon a predecessor's claims experience and holding a successor company liable for claims due that the predecessor itself promised to pay under a retrospective-rating plan.
Furthermore, R.C. 4123.32(D) confers two distinct types of rulemaking power on the Bureau. The first type is to adopt rules establishing which workers' compensation premium rates apply when "one employer takes over the occupation or industry of another." The second type is to adopt rules establishing who should assume payments due on an employer's account after he "transfers his business in whole or in part, or otherwise reorganizes the business." Lake Erie concerned the Bureau's power to regulate rates, and not the power to regulate payments, the issue in the instant matter. * * * [W]e continue to adhere to our position that the definition of "successor in interest" inLake Erie is properly applied for purposes of transferring or combining the experience ratings of employers. As the Bureau's Law Director astutely points out, the rule in Lake Erie "is designed to place workers' compensation [rate] experience with the proper employer * * * embrac[ing] the general philosophy that the best predictor of future performance is past experience." (Emphasis added.) However, this case has nothing to do with experience ratings, and the rationale espoused above is irrelevant in a retrospective-rating plan.
Id. at 474. (Emphasis sic.)
 {¶ 46} Clearly, relator was a successor in interest in the present case and, as such, the BWC did not abuse its discretion in determining that relator should assume part of CSR, Inc.'s claims experience rating following the purchase of the assets in the bankruptcy proceedings. Again, nothing in the purchase agreement nor the bankruptcy order itself specifically addressed the transfer of the experience rating which, as stated previously, is not a claim or payment of any kind. To the extent that Crosset stands for the proposition that where the transfer is voluntary and direct, the acquiring company is a successor in interest, relator's arguments fail. Furthermore, to the extent that the BWC has discretion to make the determination where it is "just in the circumstances," relator has not shown an abuse of discretion.
 {¶ 47} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the BWC abused its discretion and relator's request for a writ of mandamus should be denied.
 /s/ Stephanie Bisca Brooks
Stephanie Bisca Brooks Magistrate
[1] According to the stipulated record, CSR, Inc. is also identified as Corporate Staffing Resources, LLC. (Stip. Ex. L.)