DECISION
{¶ 1} Valley Roofing, LLC ("Valley Roofing") filed this action in mandamus, seeking a writ to compel the Ohio Bureau of Workers' Compensation ("BWC") to vacate its decision finding Valley Roofing to be a success in interest to Tech Valley Contracting, Inc. ("Tech Valley") and to compel the BWC to enter a new order finding Valley Roofing is not a successor in interest to Tech Valley. *Page 2 
 {¶ 2} In accord with Loc.R. 12, this case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision included a recommendation that we grant the requested writ.
 {¶ 3} Counsel for the BWC has filed objections to the magistrate's decision. Counsel for Valley Roofing has filed a memorandum in response. The case is now before the court for a full, independent review.
 {¶ 4} This case turns upon the applicability of State ex rel. CrossetCo., Inc. v. Conrad (2000), 87 Ohio St.3d 467, to the facts presented by Valley Roofing's situation. In the Crosset case, a bank acquired the assets of a company as a result of a security agreement and then sold the assets to a new company. The Supreme Court of Ohio found the new company was not a successor in interest because the old company did not transfer the assets. The bank transferred the assets. This is precisely what occurs when Valley Roofing acquired the assets of Tech Valley.
 {¶ 5} Counsel for the BWC argues that the Crosset case should not be applied. We do not see the distinction. The Supreme Court of Ohio decided the Crosset case based upon the failure of a direct transfer of the assets between the companies involved and construed R.C. 4123.32 to require a direct transfer for a successor in interest relationship to exist. R.C. 4123.32 reads in pertinent part:
 The administrator of workers' compensation, with the advice and consent of the workers' compensation oversight commission, shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund including all of the following: *Page 3 
 * * *
 (D) Such special rules as the administrator considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter[.]
 {¶ 6} Tech Valley did not transfer a business. Tech Valley lost a business to a bank as the result of a security agreement. Valley Roofing bought the assets from the bank.
 {¶ 7} We overrule the objections to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we grant a writ of mandamus compelling the BWC to vacate its order finding Valley Roofing to be a successor in interest to Tech Valley and compelling the BWC to determine the experience rating of Valley Roofing without considering the prior experience rating of Tech Valley.
Objections overruled; writ of mandamus granted.
 BROWN and McGRATH, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered August 29, 2007 IN MANDAMUS {¶ 8} Relator, Valley Roofing, LLC ("Valley Roofing"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to vacate its decision finding that Valley Roofing was a "successor in interest" to Tech Valley Contracting, Inc. ("Tech Valley"), pursuant to R.C. 4123.32, Ohio Adm. Code 4123-17-02(B), and State ex rel. LakeErie *Page 5 Constr. Co. v. Indus. Comm. (1991), 62 Ohio St.3d 81, and ordering the BWC to find that Valley Roofing is not a "successor in interest" to Tech Valley for workers' compensation purposes.
Findings of Fact:
 {¶ 9} 1. Valley Roofing was formed as a limited liability company on April 24, 2003.
 {¶ 10} 2. Tech Valley was a company that had been in existence for a number of years.
 {¶ 11} 3. Tech Valley defaulted on obligations to its financial lender, PNC Bank.
 {¶ 12} 4. PNC Bank sent a letter to Tech Valley by certified mail on April 29, 2003. That letter provided, in relevant part:
 This letter is to confirm to you that with your agreement we have taken possession of the equipment, accounts, work-in-progress and general intangibles such as contract rights of * * * (Tech Valley), effective as of April 29, 2003 ("the Collateral"). This action has been taken in accordance with the terms of the security agreement executed by Tech Valley due to its default as a result of the North Coast Commercial Roofing Judgment, the termination of Tech Valley as a going business and the insolvency of Tech Valley.
 Unless the total balance due to PNC Bank, N.A. * * * is paid by the time specified below for sale, we will dispose of the Collateral at public sale on May 9, 2003[.] * * *
 {¶ 13} 5. On that same day, April 29, 2003, PNC Bank entered into an asset purchase agreement with Valley Roofing which provided, in relevant part:
 * * * [Valley Roofing] shall purchase, acquire, and assume, from Seller, free and clear of all liens, pledges, mortgages, security interests, claims, and encumbrances of any nature whatsoever, all right, title, and interest in and to the following assets of [Tech Valley], to the extent secured by Seller: *Page 6 
 (a) all of [Tech Valley's] existing accounts receivable, work in progress, and other contract rights;
 (b) all of [Tech Valley's] outstanding bids, proposals, or contracts for future work or projects on which work has not yet commenced;
 (c) all of [Tech Valley's] office equipment, furniture, telephone system, computers, information system, small tools, and safety equipment;
 (d) all of [Tech Valley's] intangible assets and good will, including, without limitation, [Tech Valley's] rights to all trademarks, trade secrets, logos, trade names, patents, service marks, designs and specifications, proprietary and trade rights and data, processes, know how, software, telephone numbers, copyrights, registrations or applications concerning any of the foregoing, and all other intellectual property owned or used by Seller (the "Intangibles"); and
 (e) all of [Tech Valley's] right, title and interest in or to all books of account, records, files and invoices, including, but not limited to, all invoice files and correspondence related thereto, all technical product data, manufacturing and production data, testing data, equipment maintenance data, employee files, payroll information, accounting records, inventory records, purchasing records, engineering records, environmental records, sales and sales promotional data, advertising materials, customer lists, and customer data, cost and pricing information, supplier and vendor lists, installation and maintenance manuals, business plans, supply reference catalogs and any other records and data used in connection with the Business (whether in computer software, data or any other form) (the "Book and Records")[.]
 Collectively, the foregoing shall be referred to as the "Acquired Assets."
 {¶ 14} The asset purchase agreement formed the exclusive bid of Valley Roofing for the assets of Tech Valley. Competing bids were permitted; however, Valley Roofing *Page 7 
ultimately acquired all the assets of Tech Valley as set out in the asset purchase agreement.
 {¶ 15} 6. By letter dated June 22, 2004, Valley Roofing was notified that, pursuant to the recommendation of William Fugate, an auditor for the BWC, the experience rating of Tech Valley was being transferred to Valley Roofing. For a period of time, this would impact the workers' compensation premiums made by Valley Roofing. According to the letter, the transferred experience was based on the following: the successor (Valley Roofing) was operating out of the same facility from which the predecessor (Tech Valley) operated; the existing contracts were transferred to the successor by the bank and were serviced by the successor; and several of the same employees who were employees with the predecessor were now employed by the successor.
 {¶ 16} 7. Valley Roofing filed a timely protest with the BWC.
 {¶ 17} 8. The adjudicating committee of the BWC heard the matter on July 13, 2006, and issued an order providing, in relevant part:
 The employer's representative indicated that Valley Roofing is a completely different employer from Tech Valley ("Tech"). The representative indicated that Valley Roofing would have returned one of the lost time claimants to transition work, whereas Tech had not. The employer's representative indicated that Valley Roofing has its own safety programs and that its customers are its own and not those of Tech. The employer's representative stated that the blended rate that has resulted from the experience transfer makes it impossible to become group rated. The employer indicated that a number of its competitors are in 93% groups and that Valley Roofing feels that it deserves to be similarly rated.
 The Bureau's representative stated that the total experience transfer was appropriate in this instance. The BWC *Page 8 
representative stated that the purchase agreement provided for more than the mere sale of the assets of Tech in that it provided for the transfer of accounts receivable as well as other intangible assets.
 Based upon the information submitted and the testimony elicited at the hearing, it is the decision of the Adjudicating Committee to DENY the employer's protest. The Committee finds that the Sale from PNC Bank, the senior secured lender to Tech Valley Contracting, to Valley Roofing LLC was more than the mere sale of assets and constituted a transfer of a business under the Lake Erie v. IC decision and, therefore, the transfer of experience was appropriate[.]
(Emphasis sic.)
 {¶ 18} 9. Valley Roofing's appeal was heard on December 21, 2006 and resulted in the prior adjudicating committee's order being affirmed.
 {¶ 19} 10. Thereafter, Valley Roofing filed the instant mandamus action in this court asserting the BWC abused its discretion in finding that it was a successor in interest to Tech Valley and in transferring the experience rating of Tech Valley to Valley Roofing.
Conclusions of Law: {¶ 20} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 21} For the reasons that follow, it is this magistrate's conclusion that this court should issue a writ of mandamus in the instant case. *Page 9 
 {¶ 22} Although the parties' respective briefs make numerous arguments, this case is relatively simple to resolve. R.C. 4123.32
provides, in pertinent part:
 The administrator of workers' compensation, with the advice and consent of the workers' compensation oversight commission, shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund including all of the following:
 * * *
 (D) Such special rules as the administrator considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter[.]
 {¶ 23} Ohio Adm. Code 4123-17-02(B)(1) provides, in pertinent part:
 Where one legal entity, not having coverage in the most recent experience period, wholly succeeds another legal entity in the operation of a business, his or its rate shall be based on the predecessor's experience within the most recent experience period.
 {¶ 24} In the present case, the BWC concluded that Valley Roofing was a succeeding employer: a successor in interest to Tech Valley. The BWC applied and construed R.C. 4123.32(D). In Lake Erie, company A and company B performed similar work: constructed highway guardrails, installed signs, and landscaped roadways. The board of directors of company A negotiated a sale of company A's tools and equipment to company B who agreed to continue the employment of all of company A's *Page 10 
employees, assume company A's leases and purchase inventory as well. Thereafter, company A ceased bidding on any new projects and was dissolved in 1986. In May 1987, the BWC completed a final audit of company A and recommended that company A's experience rating be combined with company B.
 {¶ 25} The Supreme Court of Ohio addressed the matter and provided:
 The current controversy centers on the definition of "successor in interest." Appellees define the term by the statutory language that precedes it — successor in interest being the transferee of a "business in whole or in part." Appellant responds that R.C. 4123.32 does not define the term and, therefore, under R.C. 1.49, the court must adopt a common-law definition. This argument fails.
 We find no evidence in either R.C. 4123.32(D) or Ohio Adm. Code 4121-7-02(B) that "successor in interest" is intended to be the term of art that appellant claims. Both sections imply that a successor in interest, for workers' compensation purposes, is simply a transferee of a business in whole or in part. Presumably, the General Assembly would have expressly set forth a more specialized meaning if that was its intent. Contrary to appellant's representation, there is no need to look beyond these provisions.
Id. at 83-84.
 {¶ 26} In the preset case, although the BWC applied Lake Erie, the BWC did not consider the implications of a later case, namely State ex rel.Crosset Co., Inc. v. Conrad (2000), 87 Ohio St.3d 467. Valley Roofing cites this case as authority in this matter; however, the BWC has not responded to Valley Roofing's assertion that the Crosset Co. case is on point and resolves the matter. For the reasons that follow, the magistrate agrees with Valley Roofing that the Crosset Co. case does apply and that the BWC abused its discretion. *Page 11 
 {¶ 27} In Crosset Co., Old Crosset was a member of the state insurance fund and obtained workers' compensation coverage for its employees. In 1990, Old Crosset submitted an application to the BWC to participate in a retrospective-rating plan. The BWC approved the application.
 {¶ 28} In 1993, Old Crosset was forced to cease operations of its business when the banks foreclosed on the company's assets. On June 12, 1993, an asset sale agreement was executed between the banks and New Crosset. Old Crosset was not a party to this agreement and New Crosset continued in the same business and continued to use Old Crosset's trade name for its business.
 {¶ 29} In July 1993, New Crosset filed an application with the BWC for workers' compensation coverage. The BWC conducted an audit and found that Old Crosset ceased operating on June 12, 1993, when they were foreclosed by their banks. The auditor concluded that all of Old Crosset's assets and operations were sold to New Crosset and transferred Old Crosset's claims experience to New Crosset.
 {¶ 30} Ultimately, the matter was heard by the Supreme Court of Ohio which determined that New Crosset was not a "successor in interest" pursuant to R.C. 4123.32(D), explaining as follows:
 In this matter, there was no transfer of the business by the employer. Old Crosset did not have any assets to transfer, as its assets had been seized by Society and Fifth Third. The transaction between New Crosset and the banks did not occur until after Old Crosset had ceased operation of its entire wholesale produce business. Thus, Old Crosset was not, nor could it have been, the transferor of its own assets.
 Additionally, New Crosset purchased the assets through an "Asset Sale Agreement." The signatories to that agreement were TCC (New Crosset), Castellini Company, Society, and *Page 12 
Fifth Third. Old Crosset was not a party to the agreement. Here, the transferors of the assets are banks that have neither experience ratings nor workers' compensation coverage to which New Crosset could succeed. The transfer of the assets was not achieved through a corporate transaction conducted between Old Crosset and New Crosset, but, instead, was accomplished by a sale between New Crosset and the banks.
Id. at 471-472.
 {¶ 31} The magistrate finds that the Supreme Court of Ohio's decision in Crosset Co. applies in the present case. In both cases, the original company (Old Crosset and Tech Valley) ceased operations when their banks foreclosed. On the same day that the banks took possession of their assets, the banks entered into purchase agreements with other companies (New Crosset and Valley Roofing). The assets were ultimately purchased from the banks by those companies and the BWC determined, in each instance, that the company which purchased the assets was a "successor in interest."
 {¶ 32} In Crosset Co., the Supreme Court of Ohio determined that the BWC had abused its discretion because Old Crosset did not sell its assets to New Crosset; instead, the assets of Old Crosset were sold to New Crosset by the bank. Old Crosset was not a party to the sale.
 {¶ 33} In the present case, PNC Bank took possession of Tech Valley's assets and entered into a purchase agreement with Valley Roofing. Thereafter, PNC Bank sold those assets to Valley Roofing. Tech Valley was not a party to the purchase agreement. Pursuant to the CrossetCo. ruling, Valley Roofing is not a "successor in interest" as defined in R.C. 4123.32(D) for workers' compensation purposes. As such, the magistrate finds that Valley Roofing has established that the BWC abused its *Page 13 
discretion by concluding Valley Roofing was a successor in interest and in transferring the experience rating of Tech Valley to Valley Roofing.
 {¶ 34} Based on the foregoing, it is this magistrate's conclusion that Valley Roofing has demonstrated that the BWC abused its discretion in transferring the experience rating of Tech Valley to Valley Roofing and this court should issue a writ of mandamus ordering the BWC to vacate that order and determine the experience rating of Valley Roofing without considering the prior experience rating of Tech Valley. *Page 1